**Sonny FILIPPINI and Marjorie Mullen, individually and on behalf of all members of Script Supervisors Local 871 I.A.T.S.E., a non-profit corporation, Plaintiffs,**

v.

**H. Mattson AUSTIN, Defendant.**

**No. CV 84–3318–ER.**

United States District Court,
C.D. California.

May 21, 1985.

Robert D. Vogel, Pappy, Kaplon, Vogel & Phillips, Los Angeles, Cal., for plaintiffs.

Lloyd C. Owney, Jr., Los Angeles, Cal., for defendant.

## MEMORANDUM ORDER

RAFEEDIE, District Judge.

This case involves a dispute between the Script Supervisors Local 871, I.A.T.S.E. ("Local 871" or "the union") and H. Mattson Austin ("Austin"), a former business representative for the union. Austin contends that he was wrongfully terminated from his job. Local 871 denies this and alleges that Austin misappropriated union funds and otherwise breached his fiduciary duties to the union.

Over the past three years this relatively simple dispute has spawned three separate federal lawsuits—*Austin v. Script Supervisors Local 871, et al.*, CV 82–6820; *Script Supervisors Local 871 v. Austin*, CV 83–5241; and *Filippini and Mullen v. Austin*, CV 84–3318—and involved, in varying degrees, five of the seventeen active Judges in the Central District of California.

In the first two actions attorney Robert D. Vogel represented Local 871. In the third action, attorney Vogel represented plaintiffs Sonny Filippini and Marjorie Mullen who sued in their representative capacities as member of Local 871.

On February 28, 1985 judgment was entered for defendant Austin in the third lawsuit. Arguing that the third lawsuit should never have been filed, defendant Austin moved for the imposition of sanctions against attorney Vogel in the amount of $6,753.75, the attorney's fees Austin incurred in defending against the third action. This Court has carefully considered the motion for sanctions and all the pleadings that have been filed in the three law-

suits. Attorney Vogel was given a full opportunity to explain his actions during a hearing before this Court on March 4, 1984. After giving due consideration to the above, this Court finds that sanctions against attorney Vogel are both appropriate and required under Federal Rule of Civil Procedure 11. The Court, however, finds that the fee request is excessive. After considering the purposes of Rule 11 and the reasonableness of the fee request, the court orders attorney Vogel to pay defendant $2,000 in sanctions to partially compensate defendant for the attorney's fees incurred in defending against the third lawsuit.

## PROCEDURAL HISTORY

The first lawsuit in the Austin trilogy was filed on November 18, 1982 in Los Angeles County Superior Court captioned *Austin v. Script Supervisors Local 871, et. al.,* C 432682 (hereinafter "state suit"). Austin, the plaintiff in that action, alleged, *inter alia,* wrongful termination from his position as business representative.

On December 29, 1982 the union, represented by attorney Vogel, filed a Petition for Removal of the state suit, CV 82–6829. The removal petition alleged federal question jurisdiction pursuant to § 301(a) of the Labor-Management Relations Act, 29 U.S.C. § 185(a) (hereinafter "§ 185").

On January 6, 1983 Local 871 answered Austin's complaint and filed a counterclaim. Allegations of misappropriation of union funds had apparently precipitated Austin's termination. The union sought to recover those misappropriated funds in their counterclaim. The Union alleged that Austin converted for personal use union funds that should have been deposited in various trust fund accounts. The Union further alleged that Austin took unauthorized paid vacations, improperly paid himself double time for work on Sundays, and

improperly paid for personal automobile insurance. The Union sought $6,422.17 in damages and also alleged a generalized claim for breach of the implied covenant of good faith and fair dealing and sought such other relief the Court deemed appropriate.

On January 6, 1983 defendant Austin filed a motion to remand the action to state court. Defendant relied heavily on *Kinney v. Intern. Broth. of Elec. Workers,* 669 F.2d 1222 (9th Cir.1981) and attached a copy of the case, published by the Bureau of National Affairs ("BNA"), to the motion. Without explanation, the Motion to Remand was withdrawn on January 18, 1983.

On February 8, 1983 this Court remanded the action to state court as improvidently removed and issued a five-page order explaining its reasoning to the parties and explicitly relying on the *Kinney* case. Unbeknownst to the Court at the time, the BNA copy of the *Kinney* case had been withdrawn and an amended version of the opinion had been issued by the Ninth Circuit.[1]

Attorney Vogel knew that the Court relied on the BNA copy of the opinion but did not notify the Court for what attorney Vogel now terms "purely tactical reasons." At the sanctions hearing Vogel explained that at the time of the remand he and the union had changed their minds and decided that they wanted to litigate in state court the case they had removed to federal court six weeks earlier. Apparently, neither Vogel nor his opposing counsel felt any ethical obligation to inform the Court that it had relied on an early copy of an opinion that had later been republished.

After the remand, Local 871 vigorously pursued the counterclaim in the state suit. During a deposition of Austin, attorney Vogel contends he discovered "new" information concerning misappropriation of union funds by Austin and breach of his fidu-

---

**1.** The Ninth Circuit decided *Kinney* on May 26, 1981 and the opinion was published by BNA. On June 22, 1981 the Supreme Court decided *United Ass'n of Journeymen, Etc. v. Local 334, Etc.,* 452 U.S. 615, 101 S.Ct. 2546, 69 L.Ed.2d 280 (1981). The Supreme Court decision caused the

Ninth Circuit to withdraw and ultimately reverse its ruling regarding § 185 in *Kinney.* On February 18, 1982 *Kinney* was amended. *Kinney v. IBEW,* 669 F.2d 1222, 1229 ("Recent Supreme Court authority ... requires a change in th[e] approach to § 185(a) jurisdiction.").

ciary duties. Although this "new" information was unearthed during discovery on the union's counterclaim in the state suit, Vogel elected not to amend the counterclaim. As Vogel explained at the sanctions hearing, "I could have litigated [these claims] there [in state court] but for the reasons I've indicated as a matter of strategy and tactic I declined to amend the counterclaim." Instead, on August 12, 1983, Vogel filed a new action in federal court against Austin captioned *Script Supervisors Local 871, Etc. v. Austin*, CV 83–5241 (hereinafter "First Federal Suit"). Apparently Vogel and the union changed their minds again and wanted to be back in federal court. The alleged jurisdictional base for this action was 29 U.S.C. § 501(b). The allegations in the first federal lawsuit were similar, though not identical, to those pending in the state counterclaim. For example, the state suit alleged misappropriation of union funds for car insurance and vacations and the First Federal Suit alleged misappropriation of union funds for mileage and lodging.[2]

The union also alleged in the First Federal Suit that Austin failed to prepare and submit certain financial statements.[3]

After hearing and considering a number of issues in the First Federal Suit, this Court on December 9, 1983 issued an Order to Show Cause why the proceeding should not be dismissed for lack of jurisdiction. "When jurisdiction may not exist ... the Court *must* raise the issue ... Fed.R.

Civ.P. 12(h)(3)." *Wash. Local v. Intern. Broth. of Boilermakers*, 621 F.2d 1032, 1033 (9th Cir.1980) (emphasis added). On its face, 29 U.S.C. § 501(b), the jurisdictional base for the suit, only gives standing to union members, not unions themselves. Most of the caselaw specifically examining the standing of unions to sue under § 501(b) has found that they do not have such standing. *Graphic Arts Inter. U. v. Graphic Arts Inter. U.*, 529 F.Supp. 587 (W.D.Mo.1982); *Local No. 512, IBT v. Baker*, 473 F.Supp. 1120 (M.D.Fla.1979); *Safe Workers' Organization, Chap. No. 2 v. Ballinger*, 389 F.Supp. 903 (S.D.Ohio 1974); *contra BRAC v. Orr*, 95 LRRM 2701 (E.D. Tenn.1977) (finding implied right of action for unions under § 501(b) ). *Cf. Phillips v. Osborne*, 403 F.2d 826, 830 (9th Cir.1968) (union membership on the part of the plaintiff a condition precedent to filing a § 501 suit). In its Order to Show Cause the Court requested that the parties brief this jurisdictional question, including the legislative history of § 501(b).

Rather than respond to the Court's Order to Show Cause, attorney Vogel and the union decided to dismiss the First Federal Suit.[4] The suit was dismissed without prejudice pursuant to Fed.R.Civ.P. 41(a)(1) on January 17, 1984.

Attorney Vogel then met with his clients (Local 871) again and decided to make a third attempt to maintain an action against Mr. Austin in federal court. Representing two members of Local 871, attorney Vogel

---

**2.** In the Court's view, there are similarities between these two sets of claims. Vogel maintained at the sanctions hearing that the claims are not "anywhere remotely identical."

**3.** Vogel contends he did not know of Austin's failure to file the financial statement until Austin's deposition. This was one of the "new" facts learned during discovery. The First Federal Suit alleged that the union constitution required Austin to prepare and submit monthly financial reports to the Board of Directors and that during the eighteen months Austin was employed by the union he failed to do so. It has never been explained to the Court why it took a deposition for the union and its attorney to discover that Austin had failed to file these reports.

**4.** The complaint in the First Federal Suit alleged at Paragraph 2: "Section 501(b) of the [Labor Management Reporting and Disclosure Act] provides that if an employee of a labor union violates any of the duties articulated in Section 501(a), the *union* may sue that employee in any district court of the United States to recover damages or other appropriate relief for the benefit of said union." (emphasis added) Presumably attorney Vogel did not make the legal statement that unions have a right to sue under § 501(b) without having a belief that it was "warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law ..." Fed.R.Civ.P. 11. Nevertheless, he chose to dismiss the action rather than make his legal argument to the Court.

filed another federal lawsuit against Mr. Austin on May 7, 1984 captioned *Filippini and Mullen v. Austin,* CV 84–3318 (hereinafter "Second Federal Suit") This suit alleged that Local 871 had refused to sue Austin to recover the misappropriated funds. Filed under § 501(b), the Second Federal suit was nearly identical to the First Federal Suit except for the change in plaintiffs.

The Second Federal Suit was filed on behalf of Sonny Filippini and Marjorie Mullen, individually and on behalf of all members of Script Supervisors Local 871, I.A.T. S.E. Filippini and Mullen are members of Local 871.[5]

### SECTION 501

To understand why the filing of the third lawsuit subjects attorney Vogel to sanctions, a brief description of the substantive law involved is necessary.

Section 501(b) of the Labor Management Reporting and Disclosure Act states in pertinent part:

> When any ... representative of any labor organization is alleged to have violated [his fiduciary duties] *and the labor organization or its governing board of officers refuse or fail to sue* or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so by any member of the labor organization, such member may sue such ... representative in any district court of the United States or in any State court of competent jurisdiction to recover damages or secure an accounting or other appropriate relief for the benefit of the labor organization. No such proceeding shall be brought except upon leave of the

> court obtained upon verified application and for good cause shown ...

29 U.S.C. § 501(b) (emphasis added).

Section 501(b) is similar in form to statutes governing shareholder derivative actions and creates a remedy for individual union members only when the union itself fails to act. *Phillips v. Osborne* 403 F.2d 826, 831 (9th Cir.1968). The language of § 501(b) as well as the decisional law on the statute makes clear that there are three conditions precedent to filing a § 501(b) action.

First, a court must grant leave to allow the filing of a complaint after "good cause" has been shown. This unique provision is designed to safeguard union officials from "harassing and vexatious litigation brought without merit or good faith." *Horner v. Ferron,* 362 F.2d 224, 228 (9th Cir.1966). Leave was granted to file the Second Federal Suit by another Judge in the Central District. This Court believes that the order permitting the suit to be filed was granted because attorney Vogel, who is a very persuasive oral advocate, represented to the Court that the union had refused to sue Austin and that the State Suit involved a completely different set of claims. The number of lawsuits arising out of this dispute tends to obfuscate the substantive allegations against Austin for which damages have been sought. These, upon scrutiny, boil down to one kind of claim—misappropriation of funds. This was not readily discernable at the good cause hearing.[6]

The second condition precedent to filing a § 501(b) action is that the plaintiff be a union member and has requested that the union act against the alleged financial impropriety. *Phillips v. Osborne, supra* at 830 (an actual request [must] be made ...

---

**5.** Filippini and Austin "retained" attorney Vogel but at the time of the sanctions hearing had not paid any fees to attorney Vogel for bringing their lawsuit. Presumably Local 871 was paying attorney Vogel's fees in the state suit.

**6.** There is no mention of the State Suit in the complaint in the Second Federal Suit. At ¶ 6 the complaint does mention the First Federal Suit, but indicates the union dismissed it "with

prejudice." In fact, the union dismissed that suit *without* prejudice so that the union could amend its counterclaim against Austin in state court. After the order finding good cause to bring the Second Federal Suit was entered, attorney Vogel filed an amended complaint correcting ¶ 6 substituting the word "without" for the word "with."

a mere allegation that a request would be futile would not satisfy the § 501(b) requirement); *accord Flaharty v. Warehouseman, Etc., Loc. U. No. 334*, 574 F.2d 484 (9th Cir.1978). The complaint in the Second Federal Suit does not allege any such request by plaintiffs.[7]

The third condition precedent is that the union must fail or refuse to act after such a request is made. The special remedy that Congress created under § 501(b) was designed to deal with situations where union officers or employees are abusing their positions of trust and the union membership, after complaining about such abuses to union leadership and achieving no results, has no alternative but to invoke the power of the state or federal court to stop the abuses and recover damages. The instant case is clearly not such a case. The union leadership was vigorously pursuing its claims against Mr. Austin and had not failed to act.

Nevertheless, in order to meet the jurisdictional prerequisite of § 501(b) attorney Vogel alleged at ¶ 7 of the complaint "Local 871 has refused and continues to refuse to sue defendant H. Mattson Austin ("Austin") to recover damages or secure an accounting or other appropriate relief for the unlawful acts Austin committed described hereinafter ..." Attorney Vogel signed the complaint representing to the Court that Local 871 had refused to sue Mr. Austin to recover damages when, at the same time, attorney Vogel was representing Local 871 in an action against Mr. Austin in state court.[8]

What became clear at the sanctions hearing was that there had never been a refusal by the union to pursue the claims against Mr. Austin. Instead, there was an election by attorney Vogel not to amend the state counterclaim to add what he perceived to be new claims. The following excerpt from the sanctions hearing is enlightening.

■ At ¶ 16 of Vogel's declaration to the court he stated: "Although I recognize that the state court possessed concurrent jurisdiction to entertain this claim, I recommended to my clients that it be litigated in federal court ..." The Court asked Vogel "Which clients did you recommend that to?"

Vogel: "Well, at that time I was wearing two hats ..."

＊　　＊　　＊　　＊　　＊　　＊

Court: "Well, did you also tell the Union not to proceed in the state court?"

Vogel: "We discussed that. I didn't tell them not to do anything, I gave them my—"

Court: "If you were telling the employees that they should proceed in the federal court, because the union was not taking action. What was your advice to your other client, the Union?"

Vogel: *"My advice to my other client, the Union, was that at that point in time we would not seek to amend the counterclaim, which was then pending, and instead I would represent these two people and we would pursue it in federal court."*

Court: "So, this was a case which is basically a friendly lawsuit, so far as the union and these two members are concerned?"

---

7. The complaint did state that the request requirement of § 501(b) exists and that plaintiffs had exhausted intra-union remedies. The complaint, however, never directly stated that Filippini and Mullen had requested that the union leadership take action against Austin for damages over and above those that the union was already pursuing in the counterclaim.

8. Attorney Vogel argues that while the union had sued Mr. Austin to recover the $6,753.75 in damages in the state counterclaim, it did not then have a suit pending to recover the unspecified damages for improper reimbursement for mileage and lodging and the like. Whether these latter claims are different than those pending in state court may be arguable though the Court doubts it. Whether the union "refused" to sue is not. The record shows that the only reason the union did not amend its counterclaim to add these damage claims is because attorney Vogel advised them not to. In fact, at the sanctions hearing attorney Vogel stated the union was planning to amend its counterclaim in the state suit to add these damage claims. It is clear that Local 871 has always been willing to take action against Mr. Austin.

Vogel: "I think that that would be a fair characterization, yes, your Honor."

Court: "It was a device to get the matter back into federal court."

Vogel: "I think I would also agree with that characterization ..."

Knowing that the jurisdictional argument was contrived and that the union was willing to sue, Vogel nevertheless represented to the Court that they had refused to do so. There was no basis for making that statement or for filing the Second Federal Suit. Furthermore, had Vogel researched the legal question, he would have found that the scope of jurisdiction under § 501(b) is narrowly construed. As the Ninth Circuit has written:

> In determining the scope of jurisdiction conferred by this section, we must remain mindful of the fact that the jurisdiction of the federal courts is defined and limited, by the Constitution and congressional action. Hence, statutes extending federal jurisdiction, such as Section 501(b) are narrowly construed so as not to reach beyond the limits intended by Congress. Such a construction is especially appropriate when, as here, the statute generally concerns rights subject to full and satisfactory vindication in state courts.

*Phillips v. Osborne,* 403 F.2d 826, 828 (9th Cir.1968); *accord Flaherty v. Warehousemen, Etc., Loc. U. No. 334,* 574 F.2d 484, 487 (9th Cir.1978) (§ 501(b) strictly construed).

Finally, as far as substantive matters are concerned, Vogel maintained at the sanctions hearing that the claims in the Second Federal Suit were different than those the union is pursuing in the state action. It is true that the specific allegations in the Second Federal Suit are not identical to those in the State Suit. It is also true, however, that the State Suit seeks damages for misappropriation of funds and so does the Second Federal Suit. The State Suit seeks $6,422.17 in damages from Austin plus such additional relief the court deems proper. The Second Federal Suit does not seek any specific actual damages, though it

does seek $50,000 in punitive damages. The claims are clearly related. Whether they seek the identical relief is not relevant. The State Suit, as well as the First Federal Suit, are evidence that the union has not refused to sue Austin as is attorney Vogel's admission that the union is now planning to amend the counterclaim. The further allegation in the First and Second Federal Suits that Austin failed to file financial reports appears to be window dressing designed to make the state and federal suits look different. In the prayer for relief in the Second Federal Suit, the plaintiffs sought no actual damages for this alleged breach of fiduciary duties.

### Rule 11

■ Rule 11 states in pertinent part: The signature of an attorney or party constitutes a certificate by him that he has read the pleading ... that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law and that it is not interposed for any improper purpose such as to harass.... If a pleading ... is signed in violation of this rule, the court ... *shall* impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading motion, or other paper, including a reasonable attorney's fee.

Fed.R.Civ.P. 11 (emphasis added). When a court finds that a complaint or other filing is not reasonably grounded in fact or law, after giving due consideration to the circumstances, the imposition of some sanction is mandatory under Rule 11.

■ Rule 11 was amended in 1983 to give courts greater authority to impose sanctions in order to deter multiplicitous litigation. As the Advisory Committee Notes state: "Greater attention by the district courts to pleading and motion abuses

and the imposition of sanctions when appropriate, should discourage dilatory or abusive tactics and help to streamline the litigation process by lessening frivolous claims." The number of times this case has been considered by this court and parts of this case by other judges in this district suggests that this action is precisely the kind that the amendments to Rule 11 were designed to prevent.

■ Before sanctions can be imposed, this Court must consider the circumstances under which the action was filed. "The new language stresses the need for some prefiling inquiry into both the facts and the law to satisfy the affirmative duty imposed by the rule. The standard is one of reasonableness under the circumstances." Rule 11, Advisory Committee Notes.

The Advisory Committee cautions:

The rule is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories ... Thus what constitutes reasonable inquiry may depend on such factors as how much time for investigation was available to the signer; whether he had to rely on a client for information as the facts underlying the pleading; ... [and] whether the pleading ... was based on a plausible view of the law ..."

■ The conduct that this court finds sanctionable the filing of the Second Federal Suit and the statement in that suit that the union had refused to pursue the allegations against Austin. Weighing the three factors suggested above—time for inquiry, source of facts, and the plausibility of the signer's view of the law—Vogel's conduct cannot be condoned.

*Time for Inquiry*—Attorney Vogel represented either the union or Filippini and Austin or both in these cases for over 16 months before the Second Federal Suit was filed. There were nearly four months between Local 871's dismissal of the First Federal Suit and Vogel's filing of the Second Federal Suit. There was certainly sufficient time for him to research the law under § 501(b) thoroughly before subjecting Austin to a third lawsuit.

*Source of Facts*—Attorney Vogel knew the facts of this case as well as anyone, perhaps better than anyone, when the Second Federal Suit was filed. He filed pleadings in the state and federal action, he deposed Austin, and he worked closely with the union leadership. When attorney Vogel represented to the Court that the union had refused to sue Austin, he had the facts to know that the statement was only true in the most hypertechnical meaning of the word. He knew, or should have known, that the statement might mislead a reader who was not fully aware of the State Suit in which the union had counterclaimed.

■ *Plausibility of the Signer's View of the Law*—From attorney Vogel's conduct at the sanctions hearing it is clear that his view of the law is that the conditions precedent to filing a § 501(b) action, that is a request to the union leadership to sue and their subsequent refusal or failure to do so, are merely perfunctory requirements. Vogel further believed a union could conspire with some of its members to create § 501(b) jurisdiction for the union itself. This view of the law is not plausible. If this view were correct then, in effect, unions could always create standing to sue under § 501(b). All the union leadership would have to do is find a member to bring the suit. This view of the law would totally circumvent congressional intent. Vogel knew that the case law suggested that unions do not have standing under § 501(b) because he faced the question in the First Federal Suit. His solution was to tell the union not to sue and then argue that they had refused to do so. Had Vogel researched the law he would have found a lengthy discussion of the § 501(b) question in the Ninth Circuit opinion *Phillips v. Osborne*, 403 F.2d 826 (9th Cir.1968). This case discusses the congressional intent in enacting § 501(b) and cautions that its jurisdictional reach is narrowly construed, especially because the statute vindicates rights, such as those in this case, that are generally subject to vindication in state court. That statement should have tipped

off Vogel that a federal court would not be favorably inclined to broaden the jurisdictional reach of § 501(b) to consider claims of misappropriation of funds for mileage, lodging and meals when there was a pending state court action concerning misappropriation of funds for salary, vacation and insurance. "Judicial interference [under § 501] should be taken only with great reluctance." *Stelling v. IBEW*, 587 F.2d 1379 (9th Cir.1978).

On all three grounds, the Court finds that there was not a reasonable basis in law or fact for the Second Federal Suit to be filed. Sanctions are required.

■ Rule 11 does not enumerate a specific set of factors the court must consider in deciding what sanctions are appropriate but the court believes in this case the following factors should be considered: deterrence, harassment of the opposing party, and reasonableness of attorney's fees. *See* Schwarzer, *Sanctions Under the New Federal Rule 11—A Closer Look*, 104 F.R.D. 181 (1985).

*Deterrence*—Under a specific deterrence rationale, sanctions would be less appropriate when an attorney appeared remorseful and apologetic for multiplying litigation. If an attorney makes a mistake and admits it, there is less of a reason to sanction him or her to make sure he or she is more careful in future litigation. Such is not the case in the instant proceeding. From his conduct at the sanctions hearing, it appears to the court that if attorney Vogel had it to do all over again, he would act in the same way. Therefore, monetary sanctions, as opposed to a reprimand, are appropriate. Vogel's conduct cannot be condoned. He should have brought to the Court's attention the misprinted BNA opinion in the state suit. He did not, even though it would have aided his client in maintaining its federal action. He should have researched the standing question before bringing the First Federal Suit and been willing to defend his position that the union had standing if he believed it to be correct. Finally, he should not have filed the Second Federal suit hoping that he could convince a court that the union he represented was not zealously prosecuting a former union official it had filed a counterclaim against in state court.

*Harassment of Opposing Party*—There is no direct evidence of intent to harass defendant Austin, but it certainly can be inferred from the circumstances of the case. The bad blood which apparently exists between the union and Austin may have been a factor in the willingness of Vogel and his client to sue Austin repeatedly on the same set of claims. While the allegations against Austin, if true, are certainly very serious, the Court cannot help but be sympathetic to his plight in this chambers over the last two years. Whether there was an intent to harass or not, Mr. Austin must have felt harassed having to defend against two federal lawsuits, neither one of which should have been filed.

*Reasonableness of Attorney's Fees*—In determining what an appropriate sanction should be, Rule 11 contemplates that shifting the prevailing party's attorney's fees to the party multiplying the litigation is an appropriate measure. But the Rule also states that such attorney's fees should be reasonable. There is well developed case law in this circuit on the question of reasonable attorney's fees. *Kerr v. Screen Extras Guild*, 526 F.2d 67 (9th Cir.1975).

Given the nature of the case and the admitted failure of defendants' counsel to move to dismiss the action earlier, the Court finds that the amount of time defendant's counsel spent on the action was excessive. Had defendant's counsel proceeded more thoughtfully, it is likely that the litigation could have been brought to a close more quickly and with fewer hours spent. "An obligation to mitigate is implicit in [Rule 11] ... The court making an award must be satisfied that the fees and expenses were reasonably necessary. It may take into account whether the same result could have been accomplished more expeditiously and whether the charges appear disproportionate, keeping in mind, however, the rule's penal and deterrent pur-

pose." Schwarzer, *supra,* 104 F.R.D. at 202 (footnote omitted).

The Declaration of Lloyd C. Ownbey ["attorney Ownbey"], defendant's counsel, filed in support of the Motion for Monetary Sanctions requests $6,753.75 in fees (approximately 54 hours at $125 an hour) for his work on the Second Federal Suit. The fee request details nine different billing periods and the amounts billed in each. For appearing at the good cause hearing and answering the complaint attorney Ownbey billed $1,468.75. For the summary judgment motion preparation he billed $2,562.50. For the summary judgment hearing and the work on the sanctions issue he billed $2,722.50. The court believes that this case, if properly handled, could have been disposed of at the good cause hearing or on a motion to dismiss. Attorney Ownbey was familiar with the facts and the law in the case because he represented defendant Austin in the previous two actions and, in the court's view, did not need to expend all the time he did on the case. The court notes that on its first opportunity to review the case, it disposed of it. Had the opportunity come earlier in the litigation, so would have the disposition.

At the sanctions hearing the court indicated its tentative conclusion that an award of $1,000 in attorney's fees was reasonable. Upon review of the record in the case in preparing this order, the court increases the attorney's fee award to $2,000. The court finds 20 hours of work at $100 an hour was a reasonable amount of time to spend on the case given its complexity and the skill of counsel. The court increases the award because the Second Federal Suit was not originally assigned to this court and was initially reviewed by two other Central District Judges. Ultimately the case was transferred to this court pursuant to Local Rule 4. Prior to the transfer, attorney Ownbey was justified in expending additional time briefing the matters in the case to a judge unfamiliar with the prior two actions.

Weighing carefully the *Kerr v. Screen Extras Guild, supra* factors and reviewing the declaration of attorney Ownbey and the pleadings he drafted and filed, the court hereby imposes $2,000 in sanctions against attorney Robert D. Vogel to compensate defendant H. Mattson Austin for the reasonable attorney's fees billed to him for his defense in the Second Federal Suit.

IT IS SO ORDERED.