ORTHO PHARMACEUTICAL CORPO-
RATION and Johnson & Johnson
(Hong Kong), Ltd., Plaintiffs,

v.

SONA DISTRIBUTORS, INC., and
Elmcrest Trading, Ltd.,
Defendants.

No. 86–0032–CIV.

United States District Court,
S.D. Florida,
Miami Division.

Dec. 12, 1986.

Amended Order on Costs and Fees
Aug. 6, 1987.

William Wallace III, Washington, D.C., Benedict P. Kuehne, Miami, Fla., for plaintiffs.

Edward Joffee, Ellen Rubin of Sandler & Travis, Miami, Fla., for defendants.

## AMENDED MEMORANDUM OPINION AND ORDER GRANTING, IN PART, PLAINTIFFS' MOTION FOR RECOVERY OF COSTS

SPELLMAN, District Judge.

This Court is presented with a basic fraud claim. Ortho Pharmaceutical Corporation (Ortho), manufactures drugs for sale in both the United States and abroad. Johnson & Johnson (Hong Kong), is a subsidiary of its larger parent, and has an exclusive contract to sell Ortho drugs in Hong Kong, extending also into parts of Mainland China. Sona Distributors, Inc. (Sona), has a Florida office in which it sells pharmaceuticals to hospitals and drug stores. Elmcrest Trading, LTD (Elmcrest) is a trading company based in Hong Kong. Sona and Elmcrest have both commonly owned and managed in that the shareholders and directors of each company are virtually identical to that of the other.

The underlying dispute revolves around a contract that Johnson & Johnson entered into with a Mr. Yin of Chung Ching Dispensary in Hong Kong. The contract was for the sale of Ortho manufactured drugs among others sold by Johnson & Johnson, but the sale was conditioned upon the restriction that Chung Ching would market the drugs in Mainland China only, and that under no circumstances were the drugs to be resold in the United States. The reason for this restriction was based on Johnson & Johnson's market strategies abroad, which in this case, allowed for the sale of these drugs in the far east at prices well below that which it could command even at the wholesale level in the United States. The Plaintiffs allege that the Defendants conspired with Mr. Yin, and through Elmcrest purchases from Mr. Yin, Sona was ultimately able to acquire Ortho drugs at "bargain" prices for distribution and resale in the United States. Defendants do not challenge that Mr. Yin falsely misrepresented the ultimate destination for the drugs, in fact, under deposition, Mr. Yin himself admitted that he never intended the drugs for

resale in Mainland China. Defendants challenge, however, that they had anything to do with Mr. Yin, and that they neither told him to misrepresent the drugs' ultimate destination, nor were they aware of any restrictions on resale. In support of this contention, Defendants urge that there was nothing in writing evidencing a resale restriction. Furthermore, the drugs themselves were without labeling instructions forbidding their entry into the United States pharmaceutical market. On the contrary, Defendants argue that the labels were not even printed in Chinese, suggesting that no reasonable person would have cause to believe that the drugs could not be resold to other markets.

The focus of this opinion, however, is on Plaintiffs' motion to assess costs against the Defendants under Rules 11 and 37(b) of the Federal Rules of Civil Procedure. The Rule 11 claim is based on what the Plaintiffs describe as a "frivolous" motion to dismiss for lack of personal jurisdiction, which the Defendant ultimately abandoned. The other claim for cost recovery is based on what the Plaintiffs characterize as dilatory discovery tactics. After reviewing these concurrent motions, it is hereby

ORDERED AND ADJUDGED that the Rule 11 motion is GRANTED, but the Court will DENY the motion on Rule 37 discovery abuses. The Plaintiffs, within 30 days from the signing of this order, will provide this Court with an accurate itemized statement showing the costs and fees incident to their defense of Elmcrest's motion to dismiss.

## OPINION

### A. Rule 11 Sanctions

██ Elmcrests' unsuccessful attempt to avoid participating in this litigation on the theory that this Court's jurisdictional powers could not extend to this particular Hong Kong corporation was not only an incompetent motion at its inception, but it also appears as though its submission was so lacking in good faith that Rule 11 sanctions at this time are appropriate and necessary to both compensate the Plaintiffs

for the costs incurred in defending against this "frivolous" claim, and in preventing the Defendants from committing future abuses in this litigation and in others possibly to come. There is no question that the Defendants are not only owned and managed by the same individuals, but that their operations are so closely intertwined in their business practices and financial well being, particularly as it relates to this litigation, that there is no mistaking that personal jurisdiction attaches to the Hong Kong affiliate, Elmcrest. Defendants' attempts to convince this court that Elmcrest is not in fact the alter ego of Sona have been unavailing.

The recovery of Rule 11 costs in this instance is not nearly as relevant a question as is the proper timing for the imposition of these sanctions. This Court already finds that the motion to dismiss on personal jurisdiction grounds was meritless, and that the Plaintiffs are entitled to recover costs attendant to the defense of this motion. This Court finds, however, that the imposition of Rule 11 sanctions under these circumstances should be made now and not at the conclusion of trial.

When an attorney signs a pleading or motion, he or she in essence certifies that he has drafted the document in good faith and that the allegations are true and not intended to delay the litigation or harass the opposition.[1] The test in judging whether the conduct gives rise to Rule 11 sanctions is an objective one. Congress amended the rule in 1983, and in doing so, eliminated the subjective good faith standard that had existed earlier, and which required a finding that the attorney's conduct was either willful or intentional. The advisory committee notes make it clear that "the [new] standard is less stringent than the original good faith formula and thus it is expected that a greater range of circumstances will trigger its violation." Fed.R.Civ.P. 11 advisory committee note.[2]

A recent decision in the Court of Appeals for the Ninth Circuit has clarified a confusing issue in the application of Rule 11. The opinion, *In re Yagman,* 796 F.2d 1165 (9th Cir.1986), focused on the proper timing that a court should follow when considering the imposition of Rule 11 sanctions. In that case, the court reversed and remanded a ruling that imposed an excessive award of sanctions because the lower court waited

1. Rule 11 provides in relevant part:
   Every pleading, motion, and any other paper of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, ... The signature of an attorney ... constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after *reasonable inquiry* it is *well grounded in fact and is warranted in existing law or a good faith argument* for the extension, modification, or reversal of existing law, and that it is *not interposed for any improper purpose, such as to harass* or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the *reasonable expenses* incurred because of the filing of the pleading, motion, or other paper, including a *reasonable attorney's fee.*
   Fed.R.Civ.P. 11 (emphasis added).

2. The Rule is not used, however, as a general panacea to remedy all forms of attorney mis-

conduct in civil cases occurring before or during trial. *Zaldivar v. City of Los Angeles,* 780 F.2d 823, 830 (9th Cir.1986). For example, federal courts have other ways of disciplining attorneys who engage in misconduct that disrupts the efficient operation of the judicial process. *See, e.g., Roadway Express, Inc. v. Piper,* 447 U.S. 752, 764–67, 100 S.Ct. 2455, 2463–65, 65 L.Ed.2d 488 (1980) (relying on the inherent power of courts to discipline attorney misconduct); 28 U.S.C. § 1927 (1982) (disciplining an attorney who, in bad faith, "so multiplies the proceedings in any case" may be assessed excess costs, expenses and attorneys' fees), *cited in Zaldivar,* 780 F.2d at 830.

Similarly, the inappropriate filing of papers often times calls for the application of rules other than Rule 11 for the sanctioning of attorney misconduct. Indeed, rules that directly apply to the procedural situation always supercede the use of Rule 11. *See, e.g.,* Fed.R.Civ.P. 26(g) (dealing with excessive discovery requests); 37(b) (involving abuses in discovery procedure); 56(g) (applying sanctions in cases where an attorney has filed inappropriate affidavits in support of or in opposition to a motion for summary judgment).

until the conclusion of trial to discipline the attorney's conduct. The abuse that the court ultimately sanctioned continued throughout trial unabated. The ninth circuit urged that when

> sanctions are warranted by those circumstances, the court should not waiver in imposing them....
>
> . . . .
>
> ... [To not do so] flies in the face of the primary purpose of sanctions, which is to deter subsequent abuses. This policy is not well served by tolerating abuses during the course of an action and then punishing the offender after trial is at an end. A proper sanction assessed at the time of the transgression will ordinarily have some measure of deterrent effect on subsequent abuses and resultant sanctions. Such 'prompt action helps enhance the credibility of the rule and, by deterring further abuse, achieve its therapeutic purpose.'

*In re Yagman,* 796 F.2d 1165, 1184–85 (9th Cir.1986) (quoting Schwarzer, *Sanctions Under the New Federal Rule 11—A Closer Look,* 104 F.R.D. 181, 182 (1985)).

The case before this Court illustrates perfectly the reasoned analysis of the *In re Yagman* decision. In light of this Court's finding that the motion to dismiss was a frivolous dilatory tactic intended to harass the Plaintiffs and not asserted with good faith, it is highly appropriate for this Court to sanction the party now and thereby "increase the likelihood that [future] meritless claims and motions will be abandoned and additional monetary and judicial resources will be saved." *In re Yagman,* 796 F.2d at 1184. The point being, in order to effectively deter future abuses from the party or attorney at fault in this particular litigation, or from other counsel not yet familiar with severity and speed within which the Rule operates, "sanctions should be levied contemporaneously with the offending misconduct." *Id.*

█ Upon receiving an itemized list detailing the fees and related expenses incident to this Rule 11 cost recovery procedure, this Court, according to settled principles, will determine whether the Plaintiffs' incurred fees and costs were "reasonably necessary to resist the offending action." Schwarzer, *Sanctions Under The New Federal Rule 11—A Closer Look,* 104 F.R.D. 181, 198 (1985). This Court will also take notice of any precautions that the Plaintiffs could have taken on their own to mitigate the amount of resources ultimately expended in defense of this motion to dismiss. *Filippini v. Austin,* 106 F.R.D. 425, 433 (C.D.Cal.1985) (citing Schwarzer, 104 F.R.D. at 203).

### Rule 37(b) Sanctions

█ This Court denies the motion with respect to sanctioning the Defendants alleged discovery abuses. Although the Defendants may have been dilatory at first in failing to provide full discovery or in accomodating Plaintiffs' requests for access to certain records, they have remedied this condition and it appears as though the Plaintiffs have no recent complaints about the Defendants behavior. Defendants have since that time appeared ready to accomplish a meaningful and expeditious discovery.

█ Like Rule 11, Rule 37(b) is similarly focused on deterring bad faith conduct, although concerned primarily with abuses that arise in the context of facilitating an orderly discovery. *National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 642–43, 96 S.Ct. 2778, 2780–81, 49 L.Ed.2d 747 (1976). In this case, however, it appears as though the Defendants have decided to play ball, and are no longer disrupting the process. At this time, it does not appear as though either defendant is in need of a sanction as a reminder of each's continuing obligation to play within the rules of the discovery game. Moreover, a recent eleventh circuit opinion has highlighted an extreme case meriting the application of Rule 37(b). Because the objectionable but since abandoned conduct in this case pales in comparison to the continuous and outrageous abuses of discovery procedures observed in *Carlucci v. Piper Aircraft Corp, Inc.,* 775 F.2d 1440 (11th Cir.1985), this Court cannot in good conscience sanction Defendants in

the same way as they so well deserved under Rule 11.[3]

## AMENDED ORDER ON COSTS AND FEES INCIDENT TO RULE 11 SANCTIONS

On December 12, 1986, this Court issued an opinion in the above styled case that granted, in part, Plaintiffs' motion for recovery of costs incident to Rule 11 sanctions. In that opinion, this Court directed the Defendants to provide this Court with an itemized statement showing the costs and fees traceable to the Plaintiffs' need to defend against the Defendants' frivolous motion to dismiss. Now that the Defendants have furnished this information, and the Court has had time to review the amounts in question, this Court makes the following conclusions regarding this matter.

As this Court's earlier opinion indicates, Rule 11 sanctions are a serious business, and neither the relevant parties nor the courts themselves should take these matters lightly. If the Defendants' chose to dance in this manner, they should have been prepared to pay the piper for a song not worth playing, and for steps that exceeded the bounds of good taste.

There is very little question that Sona and Elmcrest are single entities for all factual and legal purposes. The Defendants, through pleadings and other pretrial statements, continually represented to this Court that they had "no corporate affiliation or relationship other than their common ownership." During discovery, Plaintiffs' counsel and this Court soon learned that the very same corporate officers of Sona who disclaimed any interest in Elmcrest, other than as owners, signed documents on behalf of Elmcrest as directors or shareholders. Moreover, Defendants publicly represented to Government officials in Hong Kong, and to businessmen in Florida that Elmcrest and Sona were one

and the same. In sending one of its corporate vice-presidents, Inder Chawla, to Hong Kong to establish Elmcrest, Sona represented to Hong Kong officials that it intended to expand its operations to the far east, and that Inder Chawla would manage the day to day operations of the office. Similarly, Sona sent numerous letters to Florida businesses indicating that they were in the process of opening a Sona office in Hong Kong.

As further examples of this singular relationship, Sona leased the Hong Kong office space that Elmcrest occupied. Similarly, various telexes indicate that there were substantial transfers of money between the two companies, presumably to pay Elmcrest's operating expenses. Finally, the balance sheets for Elmcrest show that it maintained a very large account which Sona denominated "current account with *Head Office*."

The Defendants knew of this fraud. Counsel should have known and should have prevented it. Any effort to comply with Rule 11 would have disclosed these facts.

Although it appears as though the Plaintiffs' summary of fees and expenses is substantial, this Court will not hesitate for a moment to impose these sanctions, no matter how ominous it appears, in order to effectively apply Rule 11 and discipline the appropriate parties. The summary of these costs and fees that this Court finds allowable are as follows:

| | |
|---|---|
| Attorneys' Fees Prior to August 1, 1986— | $25,067.50 |
| Paralegal Expenses Prior to August 1, 1986— | $862.00 |
| Expenses Copying— | $700.00 |
| Miami Document Production— | $611.05 |
| Court Reporter— | $611.00 |
| Discovery Abuses/Attorneys' Fees— | $8,000 |
| Total: | $35,851.55 |

leading to the imposition of sanctions under Rule 11. This Court, in order to avoid confusion, thought it best to issue only one form of sanctions so as to not give rise to any inference that the Defendants were being penalized twice for essentially the same misconduct.

---

3. Although this Court denies the Rule 37 motion, that in and of itself in no way precludes the Plaintiffs from including in their submitted list of fees and costs those that were incurred during discovery so long as all of the recovered costs are traceable to the improper conduct

This Court has not granted all of the costs and fees that the Plaintiffs have listed. Some of these amounts included periods in the posture of the case where it is unlikely that the Plaintiffs invested much time and money on the personal jurisdiction defense. In other instances, this Court was of the opinion that the costs were unnecessary and should be borne by the side wishing to undertake a vigorous and costly litigation strategy. Although the imposed sanctions are somewhat onerous, they do not amount to the kind of "fee-shifting" arrangements that the Defendants' believe will take place in this context.

Based upon the above findings, it is hereby

ORDERED AND ADJUDGED that the attorneys for the Defendants and the Defendants themselves are jointly and severally liable for the fees and costs in question. The Defendants and their attorneys are directed to pay to the Plaintiffs the amount of $35,851.55 forthwith, in accordance with this order.

Michael H. Davidson, Fort Lauderdale, Fla., for plaintiff Wilfredo Navarro.

James A. Minix, Miami, Fla., defendant Rina Cohen.

Thomas F. Panza, Panza, Maurer, Maynard & Platow, Ft. Lauderdale, Fla., for defendant Tony Pineda.

Lucia A. Dougherty, City Atty., Leon M. Firtel, Asst. City Atty., Miami, Fla., for defendants Diosado Diaz, Dagoberto Rodriguez.

Roger G. Whelcher, Miami, Fla., for defendant City of Hialeah.

Goodwin, Welcher & Carrier, P.A., Miami, Fla., for defendants Raul Martinez, Frank Angulo and Anthony Angulo.