In re Virgil P. PHILLIPS, Gina
Phillips, Debtors.

Bankruptcy No. 2-87-02708.

United States Bankruptcy Court,
S.D. Ohio, E.D.

Feb. 11, 1988.

James S. Huggins, Theisen, Brock, Frye,
Erb & Leeper Co., L.P.A., Marietta, Ohio,
for Peoples Banking & Trust Co.

Arnold S. White, Columbus, Ohio, Trustee.

## ORDER ON MOTION OF THE PEOPLES BANKING & TRUST COMPANY FOR SANCTIONS AGAINST ARNOLD S. WHITE, TRUSTEE

R. GUY COLE, Jr., Bankruptcy
Judge.

This matter is before the Court upon the "Motion of The Peoples Banking & Trust Company, a Party in Interest, for Sanctions Against Arnold S. White, Trustee." The Court has jurisdiction over this proceeding pursuant to 28 US.C. § 1334(b) and the General Order of Reference entered in this District. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

### STATEMENT OF FACTS

1. Virgil P. Phillips and Gina Phillips ("Debtors") filed a petition under Chapter 7 of the Bankruptcy Code on June 18, 1987.

2. Arnold S. White ("White") was appointed the Interim Trustee pursuant to this Court's order of June 23, 1987. Following the meeting of creditors held pursuant to 11 U.S.C. § 341, White became the Trustee, from which trust he was relieved pursuant to order entered December 22, 1987.

3. On July 23, 1987, The Peoples Banking & Trust Company ("PBT") mailed to White, Debtors and Debtors' attorney, a proposed Stipulation, Agreed Order for the Lifting of the Automatic Stay, Abandonment, and Extinguishment of Redemption Rights ("Agreed Order"), and Motion for relief from stay, abandonment, and extinguishment of redemption rights ("Motion").

4. The Motion was filed with this Court on July 24, 1987, along with a Notice and Certificate of Service, which indicated mailing by Movant's attorney to White, Debtors and Debtors' attorney. The Motion requested relief with respect to the interest of PBT in a 1987 Chevrolet Nova (the "Vehicle") serving as collateral under a Retail Installment Sales Contract and Security Agreement naming PBT as the secured party.

5. On July 30, 1987, White filed, as attorney for the Trustee, a written opposition (the "Objection") to the Motion, asserting that he, as Trustee, had not yet had an opportunity to determine whether there was potential equity in the Vehicle for the benefit of the bankruptcy estate. The Objection provided that if White later determined that no equity existed for the benefit of the bankruptcy estate, the Objection would be withdrawn. Although the Objection was filed by White as attorney for the Trustee, there is no record of the Trustee requesting or obtaining authority to employ counsel.

6. On August 10, 1987, the Court scheduled a final hearing upon the Motion for September 8, 1987, at 9:30 a.m. in Courtroom 126. The Order indicates that copies of the order were mailed by the Clerk to the attorney for PBT, Debtors' attorney and the Trustee.

7. On August 14, 1987, the Trustee filed his "Final Report and Account of Trustee in No Asset Case" ("Final Report"), reporting his conclusion that all assets of the estate were either properly claimed as exempt, over-encumbered by valid liens, or of inconsequential value.

8. On September 8, 1987, a hearing was held on the Motion and an order lifting the stay and granting abandonment was entered by the Court on September 11, 1987. James S. Huggins ("Huggins"), attorney for PBT and Roger Cunion, a PBT officer, attended the hearing in support of the Motion. White did not attend the hearing nor was his absence excused by the Court.

9. Marty Greig ("Greig"), a paralegal working under Huggins' supervision, spoke with White by telephone on August 25 and with his paralegal on August 26, requesting White's signature on the Stipulation and Agreed Order. Huggins spoke with White's secretary on Friday, September 4, but did not speak with White, due to his unavailability. Huggins requested of White's secretary that White sign the Stipulation and Agreed Order. The Monday, September 7, before the hearing was Labor Day, a national holiday. Huggins made no attempt to reach White on September 7.

10. White advised Greig on August 25 that the Local Rules of Court became effective as of August 1, resulting in a change in the procedure by which abandonments were effected. He suggested that Greig discuss the matter with "Laurie," his paralegal. Greig spoke with Laurie by telephone on August 26, at which time Laurie simply reiterated White's statements of the previous day and said she was not sure whether White would sign the Stipulation and Agreed Order. Either White or Laurie, or both, suggested that Greig obtain forms which Bank One of Columbus was using in connection with its requests for abandonment.

11. On October 1, 1987, PBT filed its Motion for sanctions against White, requesting an award of monetary damages caused by White's alleged violation of Bankruptcy Rule 9011. The motion requested damages in the amount of $656.25 for attorney's fees and $120 for wages paid to Roger Cunion.

12. On October 9, 1987, White filed a Memorandum Contra the motion of PBT for sanctions and an Affidavit.

13. On October 16, 1987, PBT filed its Reply Memorandum.

14. On November 3, 1987, an actual hearing was held on the Motion of PBT for sanctions against White, following which the Court took the matter under advisement.

## DISCUSSION

This matter is before the Court largely as a result of the inattention to detail and lack of diligence by counsel in this matter. In a nutshell, Huggins, the Marietta-based

counsel for PBT, filed a motion for relief from stay, abandonment and extinguishment of redemption rights. On the same date that Greig mailed the Motion to the Court, and a copy to White, she also mailed White a proposed Stipulation and an Agreed Order terminating the stay, granting abandonment and extinguishing redemption rights. Greig's cover letter to White notified White of the filing of the Motion and requested his execution and return of the Stipulation and Agreed Order.

On July 30, White filed his Objection to the Motion and sent Huggins a form letter reciting receipt of the Motion and advising Huggins of White's policy to object to any such motion filed before the § 341 meeting of creditors "on the basis that there has been insufficient time to properly evaluate the debtor [sic] estate." White further requested that, in the future, Huggins "would wait to file motions to abandon not earlier than ten (10) days before the § 341 meeting." White's signature was affixed to the form letter by someone with the initials "LF", presumably White's paralegal who previously has been identified by the name Laurie. The § 341 meeting of creditors was held on August 14, 1987, the same date on which White filed his Final Report.

White claims that he never received the Court's order scheduling a September 8 hearing on the Motion; nevertheless, it is undisputed that his Objection expressly requested a hearing. Given his considerable experience in the bankruptcy area, the Court presumes that he knew a hearing would be routinely scheduled as a result of the filing of an Objection and a request for a hearing. Unfortunately, it appears that White filed his Objection and then simply neglected to follow up on it.

Apparently, no contact was made between White and Huggins until August 25, nearly a month later, when Greig spoke by telephone with White. The next day, August 26, Greig spoke by telephone with White's legal assistant. Huggins made no attempt to make direct contact with White until September 4, the last business day

before the scheduled hearing on the Motion. There is no indication that Greig or Huggins specifically advised White or his paralegal that a hearing was scheduled for September 8 on his Objection; to the contrary, it appears that Huggins and Greig simply inquired into whether White would sign the proposed Stipulation and Agreed Order. It seems that this misunderstanding could have been easily prevented had Huggins or Greig clearly advised White of the pendency of PBT's Motion and the scheduled hearing, and had White exercised more attention to detail or administrative control over the subject Motion.

Huggins claims that White's failure to withdraw his Objection and attend the hearing violates the provisions of Bankruptcy Rule 9011. Rule 9011, as applicable at the time White filed his Objection, provided as follows in pertinent part:

> Every petition, pleading, motion and other paper served or filed in a case under the Code on behalf of a party represented by an attorney, except a list, schedule, statement of financial affairs, statement of executory contracts, Chapter 13 Statement, or amendment thereto, shall be signed by at least one attorney of record in his individual name, whose office address and telephone number shall be stated ... The signature of an attorney or party constitutes a certificate by him that he has read the document; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass, to cause delay, or to increase the cost of litigation....

Aside from Rule 9011, Huggins has cited no legal precedent or other authority in support of PBT's motion for sanctions.

White argues that he never received notice of the September 8 hearing and, for that reason, he did not attend. White further argues that PBT never advised him, after the filing of its Motion on July 24, of

its continued request for relief from stay and abandonment. White asserts that he never knowingly refused to sign an order granting relief from stay and abandonment subsequent to the August 14 meeting of creditors. White notes that the Local Rules, made effective August 1, 1987, had generated some uncertainty on his part and on the part of some creditors holding secured claims as to "how and when the new rules affected pending motions." White argues that on July 30, 1987, when he filed his Objection, it was true and accurate because he had not had an opportunity to determine any potential benefit for the bankruptcy estate because the § 341 meeting of creditors had not taken place. He also argues that the Objection was filed in good faith and for the purpose of preserving the Trustee's rights until the meeting of creditors had been completed. White's only explanation for his failure to withdraw the Objection, despite his representation that he would do so upon a finding of no equity in the vehicle in question, is based upon the failure of PBT specifically to bring their request to his attention following the meeting of creditors.

The analogue in bankruptcy to FRCP 11 is, of course, Rule 9011, which provides that an attorney's signature to a document constitutes a certificate that to the best of the attorney's knowledge, information and belief, the document "is well grounded in fact ... and ... not interposed for an improper purpose, such as to harass, to cause delay or to increase the cost of litigation," and that if a document is signed in violation of this Rule, the Court "on a motion or on its own initiative, shall impose on the person who signed it, the represented party, or both, an appropriate sanction which may include, to the other party or parties, the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee." *Chaudhry v. Ksenzowski (In re Ksenzowski),* 56 B.R. 819, 13 B.C.D. 1292, 1301–1302 (Bankr.E.D.N.Y.1985). The language of the statute is mandatory. It requires the judiciary to take affirmative action against violators who manipulate the court system. *Eastway Construction*

*Corp. v. City of New York,* 762 F.2d 243, 254 n. 7 (2d Cir.1985). Moreover, subsequent to the 1983 amendment to Rule 11, a showing of subjective bad faith is no longer required; rather, sanctions are to be imposed when a document has been interposed, either for an improper purpose or where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the document was well grounded in fact or law. *Chaudhry v. Ksenzowski, supra,* 56 B.R. at 834, 13 B.C.D. at 1302.

The spirit and intent of FRCP, and thus B.R. 9011, is to require an attorney to make reasonable inquiry before signing any pleading, paper or motion. *Cf., Florida Monument Builders v. All Face Memorial Gardens,* 605 F.Supp. 1324 (D.Fla. 1984). When a court finds that Rule 9011 has been violated, imposition of some sanction is mandatory. However, the court has considerable discretion in determining what sanctions are appropriate and shall take into consideration such factors as deterrence, harassment of the opposing party, and reasonableness of attorney's fees. *Filippini v. Austin,* 106 F.R.D. 425 (D.Calif. 1985). Thus, the appropriate sanction is left to the sound discretion of the court. *Cf., Continental Airlines, Inc. v. Group Systems Intern. Far East, Ltd.,* 109 F.R. D. 594 (C.D.Calif.1986).

Clearly, Rule 9011 requires reasonable *pre-filing* investigation of facts and is aimed at the prevention of situations in which all parties incur unnecessary costs litigating claims pursuant to which a modicum of investigation would have avoided the controversy. *Foster v. Michelin Tire Corp.,* 108 F.R.D. 412 (D.Ill.1985). Although most of the reported decisions in this area concern pre-filing conduct, and documents filed for improper purposes, several courts have held that an attorney who signs a document is obligated, not only to conduct a reasonable investigation into the facts before filing, but also to review, examine, and reevaluate continually his position as the facts of the case come to light. If the attorney subsequently becomes aware of information or evidence which

reasonably leads him to believe that there is no factual or legal basis for his position, giving due regard to the standard of proof, then that attorney is under an obligation to reevaluate his earlier certification of the matter. *Woodfork By-and-Through-Houston v. Gavin,* 105 F.R.D. 100 (D.Miss. 1985).

■ In the matter before the Court, there is no indication that White filed his Objection for any of the improper purposes addressed or contemplated by Rule 9011. There is also no indication that he failed to make a reasonable inquiry prior to signing the Objection as attorney for the Trustee. The Objection does not state that there is equity in the subject collateral; to the contrary, it simply indicates that the Trustee was unable to determine as of July 30, 1987, the date on which the Objection was filed, that there was no equity for the benefit of the estate. Certainly, this was a reasonable position, given the fact that the meeting of creditors had not occurred. Therefore, the Court expressly rejects PBT's claim that White failed to exercise his duty to undergo reasonable inquiry prior to filing the Objection.

■ The crux of the issue is whether White's failure to withdraw his Objection and attend the September 8 hearing violate the spirit and intent of Rule 9011. The Court finds that the following language contained in the Objection is the certification by which White should be judged:

> "The Trustee has not yet had the opportunity to determine whether there is potential equity for the benefit of the bankruptcy estate. When the Trustee has determined this, and a showing is made that no equity exists for the benefit of the bankruptcy estate, *the Trustee will withdraw this written opposition.*" (emphasis added)

By filing his final report on August 14, and indicating therein that all assets were overencumbered by valid liens or of inconsequential value, White had concluded at least as of that date that he no longer had an opposition to PBT's Motion. At that time, he should have withdrawn his Objection and ensured that any hearing sched-

uled thereon was cancelled. Instead, he and his paralegal simply neglected to exercise reasonable administrative control over his opposition. The Court finds that White had a duty under Rule 9011 to withdraw his Objection as soon as he became aware of information or evidence which would reasonably lead him to believe that there was no factual or legal basis for his position. His failure to withdraw the Objection on or after August 14 is, therefore, a violation of Rule 9011.

While the imposition of sanctions is mandated here, the Court is not inclined to award attorney's fees in the requested amount of $656.25 or lost wages to PBT in the requested amount of $120 paid to Roger Cunion, the PBT officer who appeared at the hearing. The Court finds that White's violation of Rule 9011 occurred as a result of administrative oversight and carelessness, not because of any bad faith, maliciousness, or other improper purpose. The Court further finds that PBT and its counsel did not exercise reasonable diligence in pursuing its request or advising White of its continuing interest in obtaining relief pursuant to its Motion. Huggins apparently left the matter in the hands of his paralegal, who waited until August 25 to contact White, expressed no sense of urgency, and simply did not bring all the facts to the attention of White or his paralegal. Huggins did not attempt to contact White personally until September 4, the last business day before the hearing, and even then made only one telephone call. There is no indication that he left word with White, or with White's secretary or paralegal, that there was a sense of urgency or a hearing scheduled for the next business day. Nor is there any evidence that he attempted to reach White by telephone a second time. It is not unreasonable for anyone to be unavailable by telephone on a given date at a given time, when there was no advance notice that a telephone call would be placed. Thus, the Court finds that PBT's counsel could have easily prevented the occurrence of this entire episode had it exercised more diligence, either by letter or in its phone calls, in bringing its request to

the attention of White, who like all trustees, is burdened by numerous requests for relief from stay and abandonment.

Nevertheless, as noted by the *Ksenzowski* court, *supra* 56 B.R. at 835, 13 B.C.D. at 1302, "(a) an attorney has a responsibility to deal frankly and honestly with the Court. The trust and confidence placed in attorneys by the Court depends upon their deserving such trust and confidence." White's failure to maintain proper administrative control over this case caused considerable time and expense for PBT, as well as the Court in conducting a hearing and having a court reporter on duty. Accordingly, the Court finds that reasonable sanctions in the amount of $200 are appropriate here as and for PBT's attorney's fees. The Court specifically rejects any costs for the services of Roger Cunion on the ground that Movant has tendered no evidence in support of this portion of its request.

Therefore, PBT's request for sanctions is GRANTED, in part, and White is ordered to pay Movant's attorney the sum of $200 as damages resulting from his violation of Rule 9011.

IT IS SO ORDERED.