352 So.2d 1190 (1977)
HARRY PEPPER & ASSOCIATES, INC., et al., Appellants,
v.
The CITY OF CAPE CORAL, Florida, et al., and Gulf Contracting, Inc., a Florida Corporation, Appellees.
No. 76-1708.
District Court of Appeal of Florida, Second District.
November 9, 1977.
Rehearings Denied December 16, 1977.
January 5, 1978.
*1191 Philip T. Weinstein of Cunningham & Weinstein, Miami, and Henderson, Franklin, Starnes & Holt, Fort Myers, for appellants.
Richard V.S. Roosa of Pavese, Shields, Garner, Haverfield & Kluttz, Cape Coral, for appellees City and individual council members.
Daryl J. Brown of Rosin, Abel, Band, Rosin & Brown, Sarasota, for appellee Gulf Contracting, Inc.
PER CURIAM.
The issue in this case is whether a city has legal authority to accept a bid which, at the time of its submission, is facially nonconforming as to acceptable materials and components, but which is subsequently amended, prior to acceptance, to conform to the specifications as stated in the original proposal. The trial court, in essence, held that it had such authority. We disagree and reverse.
Appellee City desired to build a water treatment plant, and in March 1976 caused to be published the necessary advertisement for bids.[1] The advertisement for bids contained the following provision:
Prebid submitted by manufacturers whose equipment has not been specified is required. The Engineer's written approval of that equipment must be obtained for that equipment to be authorized for inclusion in the Bid Documents' Equipment Schedule or project work.
The instructions to bidders contained, inter alia, the following condition:
1) The Contract will be awarded to the lowest responsible bidder complying with the conditions of the Advertisement, Instructions to Bidders, General and Special Conditions, Drawings and Specifications provided such bid is reasonable and provided it is to the interest of the Owner to accept it.
*1192 Since a major component of the water plant required the use of expensive and powerful pumps, the specifications for the bids said the following about the various types of pumps to be used:
As a point of information, this project has been designated based on the use of [pumps] ... as manufactured by Johnson Pump Company; FMC Corporation, Peerless Pump Division; or equal.
Each bid required the bidder to specify the manufacturer of the pumps that he proposed to supply under his bid.[2]
After receipt of the bids, it was determined that the lowest bidder was appellee Gulf Contracting (Gulf), and the next lowest bidder was appellant Pepper & Associates (Pepper). However, Gulf's bid listed a brand of pumps, Aurora, which all parties agree would not be acceptable to the City. After the discovery of this nonconformity Smallwood, an engineer in the engineering firm retained by the City, contacted an officer of Gulf and asked him to write a letter amending Gulf's bid so it would conform to the bid specifications. A short time later Gulf submitted a letter saying that it would comply with the bid specifications as to the pumps. Smallwood then recommended that Gulf's bid be accepted.
At a city council meeting on May 28, 1976, appellant Pepper's representatives appeared before the city council and contended that the proposed award on Gulf's amended bid was unlawful. The city council then directed the city attorney to report to it on June 3 as to its legal rights with respect to this matter.
At the meeting on June 3, the City, acting on the recommendation of its project engineer and the advice of its attorney, accepted the lower bid of Gulf.
Appellant Pepper then filed a complaint for a temporary injunction to prevent the City from contracting with Gulf. Following a hearing the trial court denied the request for temporary injunction.
Thereafter Pepper filed an amended complaint for injunction, writ of prohibition, and other relief. A hearing was held on the matter. At the close of Pepper's evidence the City moved for a directed verdict. The trial court granted this motion and thereby denied the injunction. The court then entered its final judgment denying all relief to Pepper, from which this appeal was taken.
The purpose of the bidding process, as asserted in the early landmark case of Wester v. Belote, 103 Fla. 976, 138 So. 721, 723-24 (1931), is:
[T]o protect the public against collusive contracts; to secure fair competition upon equal terms to all bidders; to remove not only collusion but temptation for collusion and opportunity for gain at public expense; to close all avenues to favoritism and fraud in its various forms; to secure the best values for the county at the lowest possible expense; and to afford an equal advantage to all desiring to do business with the county, by affording an opportunity for an exact comparison of bids.
See also, 26 Fla.Jur., Public Works and Contracts, Section 14 (1959).
From the above quote it is apparent that the entire scheme of bidding on public projects is to insure the sanctity of the competitive atmosphere prior to and after the actual letting of the contract. In order to insure this desired competitiveness, a bidder cannot be permitted to change his bid after the bids have been opened, except to cure minor irregularities. 10 E. McQuillin, Municipal Corporations, Section 29.68 (Rev. Ed. 1966); 64 Am.Jur.2d, Public Works and Contracts, Section 59 (1972); Annot., 65 A.L.R. 835 (1930).
Looking to the specific facts in this case it is clear that prior to the awarding of the contract on June 3 the City was aware of the nonconforming nature of Gulf's bid. *1193 The test for measuring whether a deviation in a bid is sufficiently material to destroy its competitive character is whether the variation affects the amount of the bid by giving the bidder an advantage or benefit not enjoyed by the other bidders. 64 Am.Jur.2d, Public Works and Contracts, Section 59 (1972). Here, there is no doubt that the difference between the conforming and nonconforming pumps was material, yet Gulf was permitted to modify its bid. Further, the inclusion of the nonconforming pumps was an advantage not enjoyed by other bidders, who were required to specify only approved equipment.
No one suggests that Gulf could have been required to perform the contract with conforming pumps, as its bid specifically stated that it would use Aurora, the nonconforming pumps. Therefore, Gulf had everything to gain and nothing to lose. After everyone else's bids were opened, Gulf was in a position to decide whether it wanted the job bad enough to incur the additional expense of supplying conforming pumps.
In City of Opa-Locka v. Trustees of Plumbing Industry Promotion Fund, 193 So.2d 29 (Fla.3d DCA 1966), the appellee sought to bid on a contract to install certain sanitary sewer services for the City of Opa-Locka. As a condition precedent to any bid being filed, a bidding party had to have a certificate of competency from Dade County. Following submission of bids it was discovered that the appellee had submitted the lowest bid but did not possess the required certificate. The trial court enjoined the City from recognizing appellee's bid. In affirming the trial court, our sister court stated, "If the City may in its discretion waive this section it would be conducive to favoritism by allowing some bidders to qualify after their bids are accepted. ." 193 So.2d at 32.
Though the facts of Opa-Locka and this case are dissimilar, in both instances the municipal authority permitted the bidder to bring his bid into conformance with the specifications after the bids were opened. Our sister court did not approve of this procedure, nor can we.
The Supreme Court of Minnesota put the applicable proposition well in Coller v. City of Saint Paul, 223 Minn. 376, 26 N.W.2d 835, 842 (1947):
If officials charged with the letting of public contracts should be permitted in their discretion to permit bids to be changed after they have been received and opened, it would open the door to the abuses which it is the purpose of the requirements of competitive bidding to prevent and suppress.
See also, Application of Glen Truck Sales & Service, Inc., 31 Misc.2d 1027, 220 N.Y.S.2d 939 (Sup.Ct. 1961).
Faced with Gulf's substantially nonconforming bid, the City had but two proper alternatives: to award the contract to the next lowest bidder who met the specifications, or to reject all bids and readvertise for new ones. The City exceeded its authority by allowing Gulf to bring its bid into conformity with the specifications and then accepting it.
Reversed.
HOBSON, Acting C.J., and GRIMES and SCHEB, JJ., concur.

ON PETITION FOR REHEARING
PER CURIAM.
Upon petition for rehearing by appellee Gulf Contracting, Inc. our attention is called to the fact that in our initial opinion we reversed the judgment of the trial court without directions. Appellee correctly points out that this would be construed as returning this cause to the trial court just as if the reversed order had never been made. Bock v. Bock, 311 So.2d 684 (Fla.2d DCA 1975). As noted in our opinion, the judgment appealed from was a directed verdict entered in favor of the city at the close of appellants' evidence. At that point the trial court denied injunctive relief and entered final judgment against appellants.
Our opinion is hereby amended to remand this cause to the trial court with direction to afford appellees an opportunity to *1194 present evidence on the issues involved. See Cape Coral Bank v. Kinney, 321 So.2d 597 (Fla. 2d DCA 1975); otherwise, the petition for rehearing is denied.
HOBSON, Acting C.J., and GRIMES and SCHEB, JJ., concur.
NOTES
[1] The only legal requirement for biading cited to the court was that of Ordinance No. 2-13 which provides in relevant part:

Sec. 2-13. AUTHORIZATION FOR EXPENDITURE OF CITY FUNDS. * * * When a single lease or purchase of equipment, goods, supplies, merchandise, facilities, etc., involving the expenditure of funds of more than fifteen hundred dollars ($1,500.00) within a fiscal year, advertising for bids or the receiving of bids is mandatory.
[2] The instructions also contained other conditions requiring approval of the Engineer's Manager of Plant Design before any substitution in the specified equipment could be made. Any approval sought under this condition was required to be requested no later than 10 days prior to the time of bidding or after.