560 So.2d 272 (1990)
MERCEDES LIGHTING AND ELECTRICAL SUPPLY, INC., Appellant,
v.
STATE of Florida, DEPARTMENT OF GENERAL SERVICES and Marpan Supply Company, Inc., Appellees.
No. 89-244.
District Court of Appeal of Florida, First District.
April 16, 1990.
*273 M. Christopher Bryant of Oertel, Hoffman, Fernandez & Cole, P.A., Tallahassee, for appellant.
Susan B. Kirkland, Gen. Counsel, Dept. of General Services, Tallahassee, for appellee/Dept. of General Services.
Stephen J. Kubik, Tallahassee, for appellee/Marpan Supply Co., Inc.
SMITH, Judge.
Mercedes Lighting and Electrical Supply, Inc. appeals a final order of an administrative hearing officer awarding attorney's fees to the Department of General Services and Marpan Supply Company, Inc., as a sanction for Mercedes' filing of a frivolous bid protest. We reverse.
The Department issued an invitation to bid (ITB) on a twenty-four month contract to supply light bulbs and lamps for all state agencies. There were four bidders, including Mercedes and Marpan. Mercedes was the low bidder, but its bid was rejected because it failed to include a list of in-state service representative(s) as required in the ITB. That portion of the ITB requiring in-state service representative(s) provides:
Service
Availability of in-state representation to assist in proper application and to resolve technical problems is a requirement of this bid and the resulting contract. Bidders *274 must, therefore, include as part of the bid a list of in-state service representative(s) who will be responsible for providing these services during the term of the proposed contract. Failure to comply with this requirement will result in disqualification of bid... .
The coordination effort will be handled by the specific individual designated on the ordering instruction sheet.
The ordering instruction sheet of the ITB required designation of a product information contact, a person in the bidder's organization who could be contacted regarding any contract "which may result from this bid." Mercedes designated Victor J. LaPorta, its vice president. The ITB did not include a form to utilize in identifying in-state service representative(s).
When the Department indicated its intent to award the contract to Marpan because Mercedes' bid was nonresponsive for failure to include a list of in-state service representatives, Mercedes timely filed a protest. With its protest, Mercedes submitted its list of in-state service representatives, which included the names of some of the lamp manufacturer's sales employees. Mercedes asserted that it is the practice within the lamp industry to utilize lamp manufacturer's employees as service representatives. It was Mercedes' contention, among other things, that it had filed a bid which substantially complied with all of the material provisions of the I; that the requirement that a list of in-state service representatives be provided is not a material term of the ITB because the nature of the commodity provided  lamp bulbs  rarely requires "service" of the type contemplated by the availability of "in-state service representatives"; and thus, Mercedes' late submission of the list of in-state service representatives did not prejudice or injure any other bidder or give Mercedes an unfair advantage in the bidding process.[1] Mercedes cited and relied upon rule 13A-1.002, Florida Administrative Code, which at the time of this bid protest provided in pertinent part:
(10) Right to Waive Minor Irregularities  The agency shall reserve the right to waive any minor irregularities in an otherwise valid bid/proposal. A minor irregularity is a variation from the invitation to bid/request for proposal terms and conditions which does not affect the price of the bid/proposal, or give the bidder or offeror an advantage or benefit not enjoyed by other bidders or offerors, or does not adversely impact the interests of the agency. Variations which are not minor cannot be waived.
The ITB also included a standard provision for waiver of minor irregularities.
Marpan intervened in the administrative proceeding. The Department did not move to dismiss or strike Mercedes' petition on the grounds that it was baseless or filed for an improper purpose. Instead, the cause proceeded to a full formal hearing under section 120.57(1), Florida Statutes.
It is undisputed that only one in-state service representative needed to be designated in the bid. Mercedes introduced testimony that Victor LaPorta was an expert in lamp sales and service and in fact had worked for the lamp manufacturer. This testimony was introduced in support of Mercedes' contention that LaPorta's name would have sufficed as an in-state service representative. Also, Department personnel testified that in the past when they needed service or technical assistance for the previous contract, they contacted the contractor, not the in-state service representative. Further, the Department did not attempt to verify the qualifications of any person listed as an in-state service representative. This evidence went toward Mercedes' contention that the omission of an in-state service representative was a waivable minor irregularity.
*275 Mercedes also contended before the hearing officer that this was not a situation where bidders had to hire outside persons to use as service representatives. A bidder gained no advantage by not initially submitting an in-state service representative list. In addition, a bidder gained no advantage of price or time, and did not act contrary to the state's best interests, by submitting the list after bid opening. In support of all of its contentions, Mercedes submitted the testimony of several witnesses and introduced numerous exhibits.
The hearing officer found that Mercedes' inclusion of a product information contact (Victor J. LaPorta) could not reasonably be construed as the designation of an in-state service representative as required by the I. Rejecting Mercedes' contention that its bid was responsive to the I, the hearing officer commented that Mercedes' proof was inherently improbable and unworthy of belief. With respect to Mercedes' contention that its failure to include a list of in-state service representatives with its bid was a minor irregularity because the demand for technical assistance under the state contract was not frequent, the hearing officer found that although the frequency or infrequency of the demand for technical assistance may be a matter germane to a timely challenge to the propriety of the I requirement that a list of in-state service representatives be included in the bid, Mercedes did not protest such conditions in a timely manner, and thus waived its right to a chapter 120 proceeding to contest its priority.
The hearing officer found that to allow Mercedes to correct a deficiency after bid opening would accord Mercedes an advantage not enjoyed by other bidders. This is so, he reasoned, because Mercedes could revisit its bid on bid opening, refuse to supply the required list, and thereby effectively disqualify itself and withdraw its bid, whereas other bidders who timely submitted their lists would not have an opportunity to revisit or withdraw their bids, but would be held to the provision of the I prohibiting such withdrawal for ninety days after bid opening.
Finally, the hearing officer found that Mercedes' protest was "frivolous," as it presented no justifiable question for resolution and was without basis in fact or in law. On this point, the hearing officer found:
Mercedes knew when it submitted its bid that a list of in-state service representatives was required. It simply forgot to include that list. When this oversight was disclosed at bid opening, it tried to supplement its bid... . Now, Mercedes would have the hearing officer believe that it intended its response to the "Ordering Instructions" form, as well as the manufacturer's technical literature and price list included in the bid, as its list of in-state service representatives. Such proof is not credible, such was not Mercedes' intent, and its response cannot reasonably be so construed. Mercedes' contention that its failure to include such list should be waived as a minor irregularity is likewise factually and legally without merit. See Saxon Business Products, Inc. v. Department of General Services, 4 FALR 1102-A (1982), wherein this issue was previously resolved adverse to the position advocated by Mercedes.
By separate order, the hearing officer awarded fees to the Department and Marpan, pursuant to section 120.57(1)(b)5., Florida Statutes, which provides:
5. All pleadings, motions, or other papers filed in the proceeding must be signed by a party, the party's attorney, or a party's qualified representative The signature of a party, a party's attorney, or a party's qualified representative constitutes a certificate that he has read the pleading, motion, or other paper and that, to the best of his knowledge, information, and belief formed after reasonable inquiry, it is not interposed for any improper purposes, such as to harass or to cause unnecessary delay or for frivolous purpose or needless increase in the cost of litigation. If a pleading, motion, or other paper is signed in violation of these requirements, the hearing officer, upon motion or his own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate *276 sanction, which may include an order to pay the other party or parties the amount of reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.
In explaining his ruling at the hearing to determine the amount of fees, the hearing officer made it clear that he was awarding fees on the grounds that the proceeding was commenced for a frivolous purpose and for no other reason. He specifically found that there had been no showing that the proceeding had been initiated to cause unnecessary delay or that Mercedes sought and received an advantage by delaying the award of the contract. The hearing officer entered a final order granting the Department $24,312.00 in fees plus costs, and Marpan $20,281.00 plus costs.
We begin our review of the applicable law by noting that section 120.57(1)(b)5. is similar to rule 11, Federal Rules of Civil Procedure.[2] There are indications that this was not unintentional, and that it was expected that the case law construing rule 11 would be useful in applying section 120.57(1)(b)5.[3] Before applying rule 11 law, however, a brief review of rule 11 is necessary.
With respect to the federal rule's requirement of some prefiling inquiry into both the facts and the law, the rule uses an objective standard, "reasonableness under the circumstances," a standard more stringent than the former good-faith bad-faith analysis. Willfulness as a prerequisite to disciplinary action is no longer required. In judging the reasonableness of the inquiry, courts are reminded to "avoid using the wisdom of hindsight" and to judge the conduct of counsel and the parties by inquiring what was reasonable to believe at the time the pleading, motion or other paper was submitted. A reasonable inquiry may depend upon such factors as how much time for investigation was available to the signer, and whether the pleading, motion or other paper was based on a plausible view of the law. "The rule is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories." Advisory Committee Note to Rule 11. The rule's proscription of filing papers for an improper purpose is designed to discourage dilatory or abusive tactics and to streamline the litigation process. The rule is aimed at deterrence, not fee shifting or compensating the prevailing party. In short, the key to invoking rule 11 is the nature of the conduct of counsel and the parties, not the outcome. Schwarzer, "Sanctions Under the New Federal Rule 11  A Closer Look," 104 F.R.D. 181, 185 (1985).
*277 A party seeking sanctions under rule 11 should give notice to the court and the offending party promptly upon discovering a basis to do so. Advisory Committee Note to Rule 11. If it may be fairly accomplished, the court should then promptly punish the transgression. In re Yagman, 796 F.2d 1165, 1183 (9th Cir.1986). See also, Ortho Pharmaceutical v. Sona Distributors, Inc., 117 F.R.D. 170, 173 (S.D. Fla. 1986). If an obvious and recognizable offending pleading is filed, the court at the very least should provide notice to the attorney or party that rule 11 sanctions will be assessed at the end of the trial if appropriate. The purpose of the rule-deterring subsequent abuses  is not well served if an offending pleading is fully litigated and the offender is not punished until the trial is at an end. See In re Yagman, 796 F.2d at 1184-6; and Ortho Pharmaceutical, 117 F.R.D. at 173.
One of the basic tenets of rule 11 enforcement appears to be, not surprisingly, that a party is required to take action to mitigate the amount of resources expended in defense of the offending pleading or motion. In his article, Schwarzer comments:
Normally, although not necessarily always, a claim or defense so meritless as to warrant sanctions, should have been susceptible to summary disposition either in the process of narrowing issues under Rule 16 or by motion. Only in the rare case will the offending party succeed in delaying exposure of the baseless character of its claim or defense until trial. Permitting or encouraging the opposing party to litigate a baseless action or defense past the point at which it could have been disposed of tends to perpetuate the waste and delay which the rule is intended to eliminate. It also undermines the mitigation principle which should apply in the imposition of sanctions, limiting recovery to those expenses and fees that were reasonably necessary to resist the offending paper.
Schwarzer, 104 F.R.D. at 198.
Finally, with respect to appellate review of rule 11 violations, appellate courts apply an abuse of discretion standard in passing upon the trial court's determination of whether factual or dilatory or bad faith reasons exist to impose rule 11 sanctions; but a decision whether a pleading or motion is legally sufficient involves a question of law subject to de novo review by the appellate court. Donaldson v. Clark, 819 F.2d 1551, 1556 (11th Cir.1987).
Turning to a comparison of rule 11 and section 120.57(1)(b)5., it is immediately apparent that there is at least one significant difference between the two.[4] The signature requirement under rule 11 is directed at three substantive prongs: the factual basis of the paper, the legal basis of the paper, and its legitimate purpose. Schwarzer, 104 F.R.D. at 186. Under the statute, the signature certifies only that the paper is not interposed for an improper purpose. But, unlike the rule, section 120.57(1)(b)5. includes "frivolous purpose" as an example of "improper purpose." The question arises whether the Legislature intended, by the inclusion of the phrase "frivolous purpose," to incorporate into the proscriptions of section 120.57(1)(b)5. the other two prongs of rule 11, viz., that the signature certifies the belief (1) that the paper is well grounded in fact, and (2) is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law. We conclude after much study that section 120.57(1)(b)5. was enacted to reach the filing of papers for an "improper purpose," and that the other two prongs of rule 11, which could have very simply been inserted by the Legislature, were intentionally omitted.[5] We will resist *278 the temptation to judicially insert these two prongs into the statute.
Having thus determined the elements of the statutory prohibition, it then becomes necessary to determine the scope of the legislative proscription against filing papers for an improper purpose, which includes filing for a frivolous purpose. Turning again to the widely quoted article of William Schwarzer on what is comprehended by the improper purpose prong of rule 11, we are advised that in considering this prong, courts should not delve into an attorney's or party's subjective intent or into a good faith-bad faith analysis. Instead, if a reasonably clear legal justification can be shown for the filing of the paper in question, improper purpose cannot be found and sanctions are inappropriate. As an example, Schwarzer notes that improper purpose may be manifested by excessive persistence in pursuing a claim or defense in the face of repeated adverse rulings, or by obdurate resistance out of proportion to the amounts or issues at stake. Schwarzer, 104 F.R.D. 195 through 197.
In this case, the hearing officer found that Mercedes' protest was frivolous because it was factually and legally without merit. We must respectfully disagree with the hearing officer's finding. The hearing officer relied on Saxon Business Products, Inc. v. Department of General Services, 4 FALR 1102-A (1982). In Saxon, a bidder had failed, due to an oversight, to include a supply price list with its bid. After the bids were open, the bidder notified the Department that the prices on the bid sheets were the supply prices and were the prices currently being offered to the state. The hearing officer concluded that the failure to include the supply price sheet was not a minor irregularity because if the bidder submitted a late supply price list, the cost/copy or price could be affected.
However, we find that Saxon cannot be viewed as constituting clearly established law contrary to Mercedes' position in this case. Saxon involved a bid irregularity which could affect price, and by definition, anything which affects the price of the bid/proposal is not a minor irregularity. Rule 13A-1.002(10), Florida Administrative Code.
Moreover, we further question the hearing officer's conclusion that Saxon was legal precedent binding on Mercedes. The doctrine of stare decisis is primarily applicable only to judicial decisions and is not generally applicable to decisions of administrative bodies. See 13 Fla.Jur.2d, Courts and Judges, § 138 (1979). To permit a prior decision by another hearing officer in a bid dispute to be binding in a subsequent totally unrelated, and factually distinguishable, bid dispute would be contrary to both the spirit and purpose of chapter 120 proceedings. The essence of these proceedings is to give a person, whose substantial interests have been determined by agency action, an opportunity to attack the agency's position by appropriate means, subject to judicial review under section 120.68, Florida Statutes. State Department of Health and Rehabilitative Services v. Barr, 359 So.2d 503 (Fla. 1st DCA 1978). As this court has often said, one of the proper purposes for a section 120.57 proceeding is to allow persons affected by intended decisions of state agencies to change the agency's mind. Groves Watkins Constructors v. State, Department of Transportation, 511 So.2d 323, 329 (Fla. 1st DCA 1987), rev. on other grounds, 530 So.2d 912 (Fla. 1988). Following this line of reasoning Mercedes contends, and we agree, that a frivolous purpose, within the meaning of section 120.57(1)(b)5. should be one which is of little significance or importance in the context of the goal of administrative proceedings.
In the final analysis, we must agree with Mercedes that it had a reasonably clear legal justification for bringing this proceeding. *279 Liberty County v. Baker's Asphalt and Concrete, Inc., 421 So.2d 505 (Fla. 1982); Tropabest Foods, Inc. v. State, Department of General Services, 493 So.2d 50, 52 (Fla. 1st DCA 1986); Wood-Hopkins Contracting Company v. Roger J. Au & Son, Inc., 354 So.2d 446 (Fla. 1st DCA 1978); and Harry Pepper & Associates v. City of Cape Coral, 352 So.2d 1190 (Fla. 2d DCA 1978). The hearing officer was presented with competent and substantial evidence on both sides of the issue, and with competent and thorough legal briefing by counsel. That the hearing officer chose to adopt appellees' position over Mercedes should not be the basis for harsh punitive action.
Lastly, Mercedes contends that if its pleading was so deficient as to be entirely meritless, did not present a case, and was frivolous, the Department had a duty to reduce its expenses by raising objection by motion in opposition to the petition under rule 22I-6.004(5), Florida Administrative Code, within twenty days of the filing of the petition, which the Department failed to do. That this rule  permitting motions in opposition to a petition  does not, as the Department informs us, empower the hearing officer to issue a final order disposing of the case, is of little consequence here. Whatever may be the force and effect of rule 22I-6.004(5), section 120.57(1)(b)5. gives the hearing officer authority to impose an "appropriate sanction" for a pleading filed in violation of the statute. Although in most instances a monetary sanction in the form of reasonable fees and costs would be an appropriate sanction, we think that section 120.57(1)(b)5. also contemplates an order by the hearing officer striking a pleading filed for an improper purpose. Indeed, the orderly conduct of proceedings would appear to dictate the striking of a pleading or, at the very least, an order for its withdrawal or amendment on pain of additional sanctions for unwarranted refusal, at the earliest stage at which a violation of the statute can be determined. Otherwise, the intended preventative effect of this statute would be severely weakened.
REVERSED.
BOOTH and THOMPSON, JJ., concur.
NOTES
[1] Later, Mercedes added its contention that its bid was responsive because it named Frank LaPorta as the product information contact on the ordering instruction sheet and LaPorta was qualified to be an in-state service representative. Also, Mercedes contended its bid was responsive because there appeared on the back of the manufacturer's catalogs and price list, submitted with its bid, a Florida sales office for the manufacturer at which sales and technical information could be obtained.
[2] Rule 11 provides, in pertinent part:

Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated. A party who is not represented by an attorney shall sign his pleading, motion, or other paper and state his address... . The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. If a pleading, motion, or other paper is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the pleader or movant. If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.
[3] In Department of Professional Regulation, Division of Real Estate v. Toledo Realty, 549 So.2d 715 (Fla. 1st DCA 1989), a case involving attorney's fees under the Florida Equal Access To Justice Act, which is patterned after a federal statute, this court recently reaffirmed this proposition, commenting that where a Florida Statute is generally modeled after its federal counterpart, it will take the same construction in Florida courts as its prototype has been given in federal courts, insofar as such construction is harmonious with the spirit and policy of Florida legislation on the subject.
[4] Other differences include the fact that 120.57(1)(b)5. includes the parties' qualified representative in the requirement that the pleading, motion or other paper be signed but does not address the consequences for failure to sign, whereas rule 11 provides for striking an unsigned pleading.
[5] Examples of improper purpose which were mentioned during the legislative debate of section 120.57(1)(b)5. include health care certificate of need litigation, where one existing provider of health care services ties up the application of a competitor in administrative proceedings and judicial appeals for years while continuing to enjoy the benefits of a monopoly on services; and environmental permitting proceedings, where a competing developer or a homeowners' group creates administrative and judicial delays in the permitting process so as to bankrupt the applicant developer, either directly through the cost of litigation or indirectly through the loss of financing or foreclosure on the property.