GLICKSTEIN, Judge.
This is an appeal by Good Samaritan Hospital from a final order, denying its motion for attorney’s fees, entered by a hearing officer of the Division of Administrative Hearings. We conclude that appel-lee, HRS, filed the administrative complaint against the hospital for an “improper purpose” in violation of section 120.57(l)(b)5, Florida Statutes (1989), and accordingly, reverse the order and remand with direction to determine and award attorney’s fees for the hospital.
In denying Good Samaritan’s motion for attorney’s fees, the hearing officer concluded that the motion was bottomed on the frivolous nature of HRS’s action; however, in its motion, Good Samaritan alleged, as well, that HRS .had violated section 120.-57(l)(b)5, Florida Statutes (1989), by filing its administrative complaint for an improper purpose, i.e., attempting to enforce its PDRL Letter Policy 02-89 through adjudication, rather than rule-making as required by law.
Giving HRS the benefit of the doubt and attributing to it a legitimate concern that there not be gaps in available service of specialties by hospitals, we do not reverse the hearing officer’s finding as to an absence of frivolousness. It is clear, however, that the attorney’s fees to be paid by Florida’s taxpayers were incurred because of the absence of the exercise of proper rule and policy making at HRS, substituting therefor ad hoc decisions by supervisory employees not so empowered.
Here, a victim with a life-taking head injury did not have available to her a neurosurgeon on call at Good Samaritan Hospital when she was injured in 1988. There was no HRS policy or rule that such be available. Having been given emergency care at Good Samaritan, she was taken to Hu-mana where a neurosurgeon was on call. Although she died on the same date, the hearing officer found that given her injury, having a neurosurgeon on call at Good Samaritan would not have made a difference.
The instant controversy arose when HRS supervisory employees took a letter written to them by a Good Samaritan officer to complain about another hospital’s conduct in this incident, and transformed it into an HRS complaint against Good ■ Samaritan, sending out investigators who reported back to them that the “complaint” against Good Samaritan should not be pursued.
Thereafter, HRS supervisors provided the investigators with a copy of PDRL Letter Policy No. 02-89 (“policy letter”), drafted by non-lawyers and issued on February 1, 1989. It purports to discuss the requirements of section 395.0142, Florida Statutes. The supervisor advised the investigators to submit an amended report, based on paragraph nine of the policy letter which provides:
If a hospital provides an “ongoing” service and/or specialty and is specifically requested to accept a “stabilized” patient from a transferring hospital not providing such service and/or specialty, the hospital must accept such transfer for treatment. If specialized staff is not “on duty” or readily available, coverage for such service must be arranged by the hospital to which the patient will be transferred. Failure to accept will be a violation of [section 395.0142],
Relying on the policy letter, the HRS investigators submitted an amended report on April 13, 1989, which stated:
Good Samaritan appears to be in violation of Florida Statute 395.0142 as it pertains to Emergency Room access. In accordance with PDRL Letter Policy Number 02-89, Policy Statement 9, circulated to hospital administrators, 2/1/89, hospitals providing an “on going service” and/or specialty must accept for treatment a patient presenting themselves [sic] in the Emergency room with an Emergency condition requiring that *724 specialty. Good Samaritan had three neurosurgeons as staff and neurosurgical coverage should have been made available.
(Emphasis added).
In an interoffice memorandum dated April 17, 1989, one of the HRS investigators clarified his position regarding any alleged violation committed by Good Samaritan, saying, in part:
I have rewritten the summary to subject investigation.... I would be wrong if I did not inform you of my disagreement with this decision.
This investigation was made in response to a complaint filed by [Good Samaritan] against [Palm Beach Gardens] who had a neurosurgeon on call the night of 11/30/88. [Palm Beach Gardens] refused transfer. No investigation was requested to be made of [Palm Beach Gardens] by PDRL. I think they violated 395.0142 if the facts were correct as reported.
PDRL Letter Policy No. 02-89 is open to different interpretations. I chose to interpret that the hospital did not have service capability if they had no neuro-surgions [sic] on call or available. Hospitals do not treat patients. Physicians do. By this interpretation, Good Samaritan was in full compliance with respect to item 8 in the policy statement. [Palm Beach Gardens] apparently had neuro-surgical coverage the night of 11/30/88 and informed Good Samaritan of this. If this were true, it appears that this hospital was in violation of item 9 in the policy statement.
Apparently, the Office of Licensure and Certification takes the position that each hospital with a full emergency room must provide full emergency treatment and continuing treatment if they have the required specialty on staff- and it does not matter whether he is available or not.
The administrative complaint subsequently filed by HRS against Good Samaritan alleged that the hospital “violated sections 395.0142, 395.0143 and 401.45, F.S., in that on November 30, 1988 [Good Samaritan] failed to provide neurosurgical treatment to a patient presented to their emergency room by the Palm Beach County emergency medical services.” PDRL Letter Policy No. 02-89 was not mentioned. The complaint notified Good Samaritan that HRS intended to levy an administrative fine against it in the amount of $10,000.
The hearing officer recommended the dismissal of the administrative complaint because Good Samaritan did provide emergency medical services necessary for Rivera’s survival. Furthermore, the hearing officer determined that the complaint should be dismissed “because the standards [HRS] is attempting to enforce are not expressly or impliedly required by sections 395.0142, 305.0413, or 401.45, Florida Statutes, or by any validly adopted rule.” HRS officially incorporated the hearing officer’s recommended order in a final order, adopted the hearing officer’s ultimate recommendation and concluded that Good Samaritan was not guilty of violating any statutory or rule requirement; consequently, the administrative complaint was dismissed without prejudice.
The hearing officer also entered a final order on Good Samaritan’s petition to invalidate HRS’s non-rule policy, concluding PDRL Letter Policy 02-89 was an unpro-mulgated rule that constituted an invalid exercise of delegated legislative authority.
Holding that the hearing officer’s conclusions come within the parameters of “improper purpose” contained within section 120.57(l)(b)5, Florida Statutes (1989), is appropriate, given the power of the state, the cost to its taxpayers incurred by the improper use of that power, and the heavy yoke which can be thrust upon the target of the state’s power. It is reasonable to interpret such statute in a way which protects from and discourages abuse of such power.
In Mercedes Lighting v. Dep’t of Gen. Serv., 560 So.2d 272 (Fla. 1st DCA 1990), the court held that in considering what constitutes an improper purpose under section 120.57(l)(b)5, “the courts should not delve into an attorney’s or party’s subjec *725 tive intent or into a good faith-bad faith analysis.” Id. at 278.
Instead, if a reasonably clear legal justification can be shown for the filing of the paper in question, improper purpose cannot be found and sanctions are inappropriate. As an example, ... improper purpose may be manifested by excessive persistence in pursuing a claim or defense in the face of repeated adverse rulings, or by obdurate resistance out of proportion to the amounts or issues at stake.

Id.

The hearing officer’s failure to consider “improper purpose” beyond frivolousness, notwithstanding his findings on the merits, coupled with the facts recited herein, and the added roadblocks thrown in Good Samaritan’s way by HRS in the hospital’s rightful attempts at discovery during the formal proceedings, preclude affirmance.
LETTS and DELL, JJ., concur.