613 So.2d 1380 (1993)
DEPARTMENT OF HEALTH & REHABILITATIVE SERVICES, Appellant,
v.
S.G., Appellee.
Nos. 92-661, 92-679.
District Court of Appeal of Florida, First District.
February 19, 1993.
*1381 W. Douglas White, Asst. Dist. Legal Counsel, Dept. of Health and Rehabilitative Services, Pensacola, for appellant.
William Eddins, Pensacola, for appellee.
WIGGINTON, Judge.
These consolidated appeals are brought from separate orders entered by the hearing officer awarding attorney's fees pursuant to sections 120.57(1)(b)5., and 57.111, Florida Statutes. For the following reasons, we approve the award under section 57.111, but reverse the award under section 120.57.
Appellee, a registered nurse, is the owner and director of an adult congregate living facility known as The Elite Guest House. One of the elderly residents of that facility was G.F., who had earlier undergone surgery for a broken hip, and at the time of the incident, was convalescing as a patient in the skilled nursing unit of Pensacola Health Care, a licensed nursing home. It was established that appellee often visited G.F. while she was in the hospital and while she was at the nursing home, in order to feed her and to brush her hair.
On February 21, 1990, approximately one month following the surgery, appellee picked up G.F. at the nursing home and transported her to an appointment with G.F.'s orthopedic physician. At that time, appellee had in her possession written permission from G.F.'s guardian, an Episcopal priest, to take G.F. back to Elite if it was permissible with the doctor. Although G.F.'s orthopedic physician, Dr. Benton, was not in that day, G.F. was seen by Dr. Benton's associate, Dr. Campbell. After examining G.F., Dr. Campbell told appellee that G.F. could be returned to Elite. Accordingly, appellee immediately returned G.F. to Elite and then proceeded to Pensacola Health Care to check G.F. out and to retrieve her personal belongings.
However, when appellee arrived at Pensacola Health Care, she was stridently questioned concerning the whereabouts of G.F., and was informed that she must return G.F. immediately because G.F. had not been discharged and was not ready to be discharged. It was the opinion of Dr. Holmes, Pensacola Nursing Home's attending physician, that G.F. was not an appropriate candidate for placement in an adult congregate living facility due to her current *1382 medical condition, including incontinence, her need for receiving antibiotic treatment for a severe urinary tract infection, the fact that she was totally nonambulatory, and her suffering from mental confusion due to Alzheimer's Disease.
Upon being confronted, appellee explained to the personnel what Dr. Campbell had said to her, and showed them the letter from G.F.'s guardian. In fact, she suggested they call Dr. Campbell to verify that he had indeed discharged G.F. to Elite. At that point, the head nurse attempted to contact Dr. Campbell, who apparently declined to come to the phone to speak with either appellee or with Dr. Holmes. The nurse then contacted G.F.'s guardian, Reverend Coates, to inform him of the circumstances. At the time he was contacted, Reverend Coates was attending to a dying parishioner. Nonetheless, the nurse gave him 15 minutes to decide whether to have an ambulance retrieve G.F. from Elite and return her to Pensacola Health Care, or otherwise face the prospect of the nursing home's calling the sheriff's office to have appellee arrested. Reverend Coates decided that G.F. was to be immediately returned by ambulance to the nursing home. Upon her arrival, there was no indication that G.F. had suffered injury or harm during her approximately nine hour stay at Elite, except to the extent that sometime during that period her catheter had been removed. There was no evidence that any personnel at Elite removed the catheter, and it was not ruled out that G.F. may have removed it herself.
In due course, following an anonymous phone call, the Department of Health and Rehabilitative Services conducted an investigation and made a finding against appellee of confirmed neglect of an elderly person based upon its conclusion that G.F. was not an appropriate candidate for residency in an adult congregate living facility due to her medical condition, and that appellee's action in placing G.F. in the facility exposed the elderly woman to a risk of harm. The chief investigator for HRS in this case, Pennye Melvin, was charged with the responsibility of speaking to all people involved with G.F. and appellee on the day in question. However, Melvin admitted she never spoke to Dr. Campbell due to the fact she had "heard" he had refused to speak with her. Furthermore, no one spoke to Dr. Campbell's partner, Dr. Benton. Dr. Benton later reviewed Dr. Campbell's notes and the events that occurred in their office and wrote HRS a letter telling them, "I get the impression that Dr. Campbell felt that it was all right for the patient to be discharged from Pensacola Health Care Facility to the ACLF (Elite)." He further stated, "It is my impression that the entire incident was one of misunderstanding."
It was also revealed that Melvin did not interview any of the employees at Elite who were present the day G.F. was returned to that facility. When asked why she had not done so, she simply replied, "I don't know." However, had she interviewed Dr. Campbell, she would have been informed that it had been permissible from an orthopedic standpoint that G.F. be transferred. From Dr. Benton, Melvin would also have learned that there had been no medical contraindication for G.F.'s return to Elite contained in the medical notice that Dr. Campbell had written on the day of his office visit with G.F.
Additionally, Michael Horgen, an adult protective services specialist with HRS, was charged with the responsibility of reviewing the neglect classification recommended by Melvin. He also did not speak either to Dr. Campbell or Dr. Benton; instead, he briefly questioned one employee at Elite, but never questioned anyone else as to what supervision G.F. was under while she was there. He received Dr. Benton's letter indicating the entire event was a misunderstanding after he had recommended denial of appellee's request for expungement, and therefore felt there was nothing he could do to change the recommendation.
Appellee subsequently filed a request for expungement of the confirmed report, following which an administrative hearing was held. As a result of the hearing, the hearing officer recommended the finding of confirmed neglect be expunged. This recommendation was approved and adopted by *1383 the agency's final order, from which no appeal was taken by either party.
Also contained in the recommended order, and pertinent to the issues raised in these consolidated appeals, the hearing officer awarded appellee attorney's fees and costs pursuant to section 120.57(1)(b)5., specifically finding that the "gravamen of the bill of particulars [filed by HRS prior to the final administrative hearing] evinced a `frivolous purpose' within the meaning of the statute."
Additionally, the hearing officer found that this award of fees "shall be without prejudice to proceedings under section 57.111, Florida Statutes (1989), and Rule 22I.6.035, Florida Administrative Code, for recovery of costs and fees incurred before the filing of the bill of particulars or for other non-duplicative costs."
The recommendation of the hearing officer that the finding of confirmed neglect be expunged was confirmed by the agency's final order in which the secretary adopted and incorporated by reference the inclusions of law set forth in the recommended order, with the noted exception of "the conclusion the prosecution of this case was frivolous." In that regard, the secretary stated the following:
In this case the Hearing Officer resolved the conflicting medical testimony against the department. Failure to satisfy the burden of proof does not equate to a frivolous prosecution.
No appeal was taken by either party from the agency's final order.
Later, a hearing was held on appellee's motion seeking fees filed under section 120.57, and an order was filed on February 7, 1992. Therein, the hearing officer noted the agency's final order adopting his findings of fact and conclusions of law with the exception of the conclusion that the prosecution was frivolous. The hearing officer specifically stated in that regard that "no agency has the authority to overturn by fiat an award of attorney's fees and costs entered against it under section 120.57(1)(b)5., Florida Statutes" (citation omitted). The hearing officer went on to conclude that after the filing of the bill of particulars by HRS, which subsequently was found to violate section 120.57(1)(b)5., appellee incurred attorney's fees during the period beginning February 20, 1991, and continuing through April 18, 1991, in the amount of $5400. The hearing officer went on to find that during this same period, appellee also incurred costs in the amount of $1,015.50. Accordingly, the hearing officer ordered HRS to pay appellee $6,415.50.
The hearing officer also considered appellee's timely petition filed under section 57.111 seeking fees pursuant to Florida's Equal Access to Justice Act, section 57.111(4)(b)1. After preliminarily finding that appellee satisfied certain prerequisites for standing to seek fees under this statute, the hearing officer found that HRS "failed to prove substantial justification for concluding that anything more remarkable than a harmless misunderstanding had transpired." The hearing officer also rejected HRS' argument that the question of substantial justification was res judicata in light of the earlier agency final order wherein the agency concluded that the bill of particulars was not frivolous. In that regard, the hearing officer concluded that section 57.111, "which authorizes hearing officers to award attorney's fees and costs against agencies in appropriate cases, confers no authority on the agency litigant to insulate itself from an award by self-serving conclusions in the final order in the main case." Accordingly, the hearing officer ordered that HRS reimburse appellee
... in full for costs and attorney's fees reasonably incurred on account of HRS' initial refusal to expunge the abuse report naming S.G.; provided that HRS shall not reimburse S.G. for costs and fees awarded by order entered on February 7, 1992 more than once, and shall not pay S.G. more than $15,000 for fees and costs she incurred before February 20, 1991, and after September 26, 1991.
It is from these foregoing orders awarding fees that HRS brings these appeals. For purposes of this opinion, the appeals shall be addressed and analyzed under separate headings.

*1384 CASE NO. 92-661: SECTION 120.57(1)(b)5.

In this case, HRS raises three issues challenging the award of fees under section 120.57(1)(b)5. That section provides for an award of fees as follows:
All pleadings, motions, or other papers filed in the proceeding must be signed by a party, the party's attorney, or the party's qualified representative. The signature of a party, a party's attorney, or a party's qualified representative constitutes a certificate that he has read the pleading, motion, or other paper and that, to the best of his knowledge, information, and belief formed after reasonable inquiry, it is not interposed for any proper purposes, such as to harass or to cause unnecessary delay or for frivolous purpose or needless increase in the cost of litigation. If a pleading, motion, or other paper is signed in violation of these requirements, the hearing officer, upon motion or his own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay the other party or parties the amount of reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.
As noted above, in the hearing officer's recommended order, he made a specific finding that "[t]he gravamen of the bill of particulars evince[d] a `frivolous purpose,' within the meaning of [120.57(1)(b)5.]." It should also be recalled, that in its final order adopting the hearing officer's findings of fact and conclusions of law, the agency specifically rejected the hearing officer's conclusion that "the prosecution of this case was frivolous." The agency held that "failure to satisfy the burden of proof does not equate to a frivolous prosecution." Presently, under Point I challenging the award of fees pursuant to this section, HRS argues that the agency had the authority to reject the hearing officer's conclusion of law regarding "frivolous purpose," and that appellee's failure to appeal the agency's final order in that regard renders the issue of "frivolous purpose" res judicata, thereby precluding the hearing officer's award of fees under this section. We must disagree with HRS' position.
In Mercedes Lighting & Electrical Supply, Inc. v. State, Department of General Services, 560 So.2d 272 (Fla. 1st DCA 1990), this court was called upon to construe section 120.57(1)(b)5., and held that this statutory section proscribes the filing of papers for an improper purpose, including filing for a frivolous purpose. Its objective is similar to that of its federal counterpart, Rule 11, Federal Rules of Civil Procedure, which, the court observed, is "designed to discover dilatory or abusive tactics and to streamline the litigation process. The rule is aimed at deterrence, not fee shifting or compensating the prevailing party." Id. at 276.
It is also clear that it is the hearing officer under section 120.57(1)(b)5. who has the authority to administer the sanctions prescribed by this section. However, if the hearing officer, possessing this immediate responsibility for the procedural conduct of the administrative proceedings, is deprived of the right to impose 120.57(1)(b)5. sanctions, the purpose of the rule as stated in Mercedes is not served. Certainly, under circumstances such as those in the instant case, where the party sanctioned will ultimately be the reviewing agency, it would be fundamentally unfair to accord that agency a final say on the issue of the sanctions imposed against it. Rather, review in this court, or another district court of appeal, provides sufficient protection for the agency under such circumstances.[1] Accordingly, we answer HRS' first question in the negative and hold that in issuing a *1385 final order in a section 120.57(1) administrative proceeding, the agency does not have the authority to reject the hearing officer's conclusion of law regarding "frivolous purpose" for purposes of a subsequent award of attorney's fees pursuant to section 120.57(1)(b)5., where those fees are awarded as a sanction against the reviewing agency.
Turning to Point II, HRS more generally argues that the hearing officer's conclusion of "frivolous purpose," is, in any event, unsupported by competent and substantial evidence. On this point, we must agree that as the section has been construed, HRS' filing of the bill of particulars in this case did not evince a frivolous purpose under the meaning of the statute.
In its recommended order finding appellee to be entitled to fees under section 120.57(1)(b)5., the hearing officer expressly relied on this court's decision in Mercedes Lighting & Electrical Supply, Inc. In that case, this court determined "the scope of the legislative proscription against filing papers for an improper purpose, which includes filing for a frivolous purpose." 560 So.2d at 278. Again, we turned to Rule 11 and a widely quoted article interpreting "the key to invoking Rule 11," which advised that a party's subjective intent is not the question, but rather, "if a reasonably clear justification can be shown for the filing of the paper in question, improper purpose cannot be found and sanctions are inappropriate." Id. As an example, the article noted that "improper purpose may be manifested by excessive persistence in pursuing a claim or defense in the face of repeated adverse rulings or by obdurate resistance out of proportion to the amounts or issues at stake." Id.
Applying the foregoing observations to the facts of the instant case, just as we did in regard to the hearing officer's findings of frivolous purpose in Mercedes Lighting, we now conclude that though HRS was unsuccessful in carrying its burden of proof during the expungement hearing, the evidence that it had before it and the testimony of Dr. Holmes sufficiently created a reasonably clear legal justification for its filing of the bill of particulars.[2] That the hearing officer chose to adopt appellee's position over that of HRS should not be the basis "for harsh punitive action." Id. at 278-79. Accordingly, we are compelled to reverse the order awarding fees pursuant to section 120.57(1)(b)5.[3]

CASE NO. 92-679: 57.111 FEES AND COSTS
Section 57.111 is known as the "Florida Equal Access to Justice Act." See section 57.111(1), Florida Statutes. In subsection (2), the legislature specifically found "that certain persons may be deterred from seeking review of, or defending against, unreasonable governmental action because of the expense of civil actions and administrative proceedings." Accordingly, the statute's stated purpose "is to diminish the deterrent effect of seeking review of, or defending against, the governmental action by providing in certain situations an award of attorney's fees and costs against the state." To that end, section 57.111(4)(a) provides for an award of attorney's fees to be made to a prevailing small business party "unless the actions of the agency were substantially justified or special circumstances exist which would make the award unjust." (Emphasis added.)
In the instant case, the hearing officer found appellee entitled to fees and costs under this section on the basis of her status "as a prevailing small business party." HRS does not challenge that finding of preliminary entitlement but rather argues, again, that the original agency final order concluding that HRS' prosecution of the case did not constitute a "frivolous purpose" was sufficient to defeat an award of fees under the instant section by implying that HRS possessed substantial justification in instituting the proceeding. Thus, as *1386 HRS urged in the preceding case, appellee's failure to appeal the initial agency final order renders the agency's conclusion of law on this point res judicata. Again, we disagree with HRS' position.
By virtue of the clear authorization given a hearing officer under section 57.111(4)(d) to award attorney's fees against a governmental entity, no real issue exists as to an agency's prerogative to countermand such an award. Thus, HRS' position that the agency's final order was res judicata on this point is completely without merit.
However, equally as erroneous is HRS' equating a finding of "no frivolous purpose" with a finding of "substantial justification," as that phrase is defined in subsection 57.111(3)(e). In Gentele v. Department of Professional Regulation, Board of Optometry, 513 So.2d 672 (Fla. 1st DCA 1987), this court addressed the issue of whether fees were properly awarded pursuant to section 57.111, and concluded that it must follow persuasive federal authority in defining the scope of the statutory definition of "substantially justified." In that respect, McDonald v. Schweiker, 726 F.2d 311, 316 (7th Cir.1983), proposed that "nonfrivolous" (as that term is utilized in federal rule 11) may not be equated with "substantial justification" for purposes of awarding fees under the Federal Equal Access to Justice Act. Rather, the phrase "substantially justified" was defined in McDonald as meaning that "the government must have a solid though not necessarily correct basis in fact and law for the position that it took" in the action. Id. at 316. Thus, the clear implication is that while governmental action may not be so unfounded as to be frivolous, it may nonetheless be based on such an unsteady foundation factually and legally as not to be substantially justified.
Similarly, under section 57.111(3)(e), a proceeding is considered to have been "substantially justified" if "it had a reasonable basis in law and fact at the time it was initiated by a state agency." Consequently, HRS' first point urging that the agency's final order rejecting the finding of frivolous purpose also established that HRS' action was substantially justified, and was therefore res judicata for purposes of section 57.111, is equally without merit.
Next, under Point II, HRS questions whether appellee's act of pleading entitlement to attorney's fees under section 57.111 after final judgment in the main case waived her right to attorney's fees under the recent supreme court decision in Stockman v. Downs, 573 So.2d 835 (Fla. 1991). In Stockman, the Florida Supreme Court adopted what it considered the "better view" that "a claim for attorney's fees, whether based on statute or contract, must be pled." Id. at 837. In response, appellee argues that HRS' reliance on Stockman is misplaced, urging that the supreme court was not addressing a situation such as the instant case where a statute awarding fees is predicated on the prevailing status of the party, which inquiry logically cannot even commence until the party has "prevailed."
Although the supreme court in Stockman appeared to repudiate to a great extent appellee's argument,[4] we need not reach that issue as we hold this case clearly falls within the exception enunciated in Stockman. Under that exception, a party having notice that an opponent claims entitlement to attorney's fees, "and by its conduct recognizes or acquiesces to that claim or otherwise fails to object to the failure to plead entitlement," thereby waives any objection to the failure to plead a claim for attorney's fees. Id. at 838. In the instant case, HRS had clear notice of appellee's request for fees, and in fact, at the hearing, made no objection to any failure on appellee's part to plead entitlement. Counsel, instead, merely interjected a general *1387 objection to the imposition of fees against the department without further explanation. Thus, any objection on the basis of notice was waived.
Finally, turning to Point III, HRS argues that the hearing officer's conclusion that it lacked "substantial justification" for the action was not supported by competent and substantial evidence. On this point, we disagree. The facts relied on by the hearing officer, and as appear in the record, reveal a totally irresponsible investigation of the charges on the department's part, in spite of the fact that HRS possessed knowledge that there may have been a misunderstanding between appellee and Dr. Campbell. Knowing that "substantially justified" may not be equated with the term "non-frivolous," and given the fact that section 57.111 is clearly a rule of inclusion mandating the award of fees to a prevailing small business unless the agency was substantially justified, we hold that the award of fees below was appropriate. The proceeding instituted by HRS in the instant case had no reasonable basis in law and fact at the time it was initiated and therefore was not "substantially justified." Cf. Ann & Jan Retirement Villa, Inc. v. Department of Health and Rehabilitative Services, 580 So.2d 278 (Fla. 4th DCA 1991).
Accordingly, we affirm the fees awarded under section 57.111. However, in light of the fact that we have reversed the fees awarded under section 120.57(1)(b)5., and because section 57.111, being more pervasive than 120.57(1)(b)5., authorizes an award of fees for the entire cost of the proceedings, we remand the cause to the hearing officer to consider appellee's right to seek additional fees under section 57.111, since he expressly did not award duplicative fees.
AFFIRMED, in part, REVERSED, in part, and REMANDED for further proceedings consistent with this opinion.
KAHN and MICKLE, JJ., concur.
NOTES
[1] The Florida Equal Access to Justice Act, section 57.111, Florida Statutes, at issue in case no. 92-679, clearly authorizes a hearing officer, and not the agency, to enter a final order on an application for award of attorney's fees. See section 57.111(4)(d). Since section 57.111 is more pervasive in that it allows an award of fees for the entire cost of the proceedings, and not simply an award as a sanction for opposing a particular pleading, we believe the legislative grant of authority to the hearing officer in section 57.111 proceedings is persuasive authority that the hearing officer possesses a similar prerogative under section 120.57(1)(b)5.
[2] We note that those portions of the bill of particulars setting forth new allegations of neglect were stricken by the hearing officer. Thus, the bill did not go unsanctioned.
[3] Our reversal on this point obviates the need for us to address the issue raised under Point III.
[4] The court was careful to note that it was not addressing the issue of whether claims for attorney's fees pursuant to 42 U.S.C. section 1988, in light of the U.S. Supreme Court's decision in White v. New Hampshire Department of Employment Security, 455 U.S. 445, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982), required a different result. Appellee would analogize the circumstances in White to those in the instant case to support her argument that Stockman v. Downs should not apply.